**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| JAWBONE INNOVATIONS, LLC,<br><br>                    Plaintiff,<br><br>         v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>                    Defendants. | Case No. 2:21-cv-00186-JRG-RSP<br><br>███████████████ |

## MOTION TO EXCLUDE EXPERT OPINIONS OF DR. D. RICHARD BROWN

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ........................................................................................... 1

II.     LEGAL STANDARD.................................................................................... 1

III.    DR. BROWN'S OPINIONS ON "RESPONSES OF VIRTUAL
        MICROPHONES" IN HIS SECOND SUPPLEMENTAL REPORT SHOULD BE
        EXCLUDED AS IRRELEVANT AND UNRELIABLE ................................... 2

        1.     Dr. Brown's Opinions in Section 2 ███████████████ ........... 2

        2.     Dr. Brown Relies on Values He Concocted, Rendering His Opinions
               Irrelevant and Unreliable ....................................................... 3

        3.     Dr. Brown Ignores the Adaptive Nature of ███████████,
               Rendering His Opinions Unreliable ........................................ 8

        4.     Dr. Brown Does Not Use Complex Gains For the GSC ..................... 10

IV.     DR. BROWN'S OPINIONS REGARDING ████████████
        ███████████ SHOULD BE EXCLUDED AS
        CONCLUSORY AND STRICKEN AS UNTIMELY ..................................... 11

V.      DR. BROWN'S OPINIONS ON INDUCED INFRINGEMENT SHOULD BE
        EXCLUDED BECAUSE THEY FALL OUTSIDE HIS EXPERTISE AND ARE
        UNSUPPORTED ........................................................................... 13

VI.     CONCLUSION ......................................................................... 15

i

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

<u>Cases</u>

*BMC Software, Inc. v. ServiceNow, Inc.*,
 No. 2:14-cv-903-JRG, 2016 WL 379620 (E.D. Tex. Feb. 1, 2016) ..........................................8

*Bocanegra v. Vicmar Servs., Inc.*,
 320 F.3d 581 (5th Cir. 2003) ...................................................................................................1

*Brown v. Ill. Cent. R.R. Co.*,
 705 F.3d 531 (5th Cir. 2013) ...................................................................................................2

*Curtis v. M&S Petroleum, Inc.*,
 174 F.3d 661 (5th Cir. 1999) ...................................................................................................1

*Daubert. Knight v. Kirby Inland Marine Inc.*,
 482 F.3d 347 (5th Cir. 2007) ........................................................................................7, 11, 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 509 U.S. 579 (1993)...................................................................................................................1

*Gen. Elec. Co. v. Joiner*,
 522 U.S. 136 (1997).............................................................................................................2, 11

*Gree, Inc. v. Supercell Oy*,
 No. 2:19-cv-00071-JRG-RSP, 2020 WL 4059550 (E.D. Tex. July 20, 2020) .................13, 14

*Guile v. United States*,
 422 F.3d 221 (5th Cir. 2005) ...............................................................................................2, 12

*Huss v. Gayden*,
 571 F.3d 442 (5th Cir. 2009) ...................................................................................................1

*Infernal Tech., L.L.C. v. Microsoft Corp.*,
 No. :18-cv-00144-JRG (E.D. Tex. June 28, 2019) ................................................................13

*Johnson v. Arkema, Inc.*,
 685 F.3d 452 (5th Cir. 2012) ...................................................................................................1

*Magna Mirrors of Am., Inc. v. SMR Auto. Mirrors UK Ltd.*,
 No. 1:17-cv-77, 2021 WL 8445572 (W.D. Mich. Sept. 7, 2021)...........................................12

*Moore v. Ashland Chemical, Inc.*,
 151 F.3d 269 (5th Cir. 1998) ...................................................................................................2

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*,
    No. 2:15-CV-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ...............................14

*Semcon IP Inc. v. MediaTek Inc.*,
    No. 2:16-cv-00437-JRG-RSP, 2018 WL 4501871 (E.D. Tex. Feb. 28, 2018).......................13

*TC Tech. L.L.C. v. Sprint Corp.*,
    No. 16-cv-153-RGA, 2019 WL 2515779 (D. Del. June 18, 2019)........................................12

*Viterbo v. Dow Chemical Co.*,
    826 F.2d 420 (5th Cir. 1987) ..........................................................................................2, 12

*Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*,
    801 F.3d 512 (5th Cir. 2015) ...............................................................................................11

## I.     INTRODUCTION

In a belated attempt to buttress evidence of infringement of U.S. Patent Nos. 8,503,691, 10,799,080, and 11,122,357 (collectively, the "Virtual Microphone Patents"), plaintiff Jawbone's technical expert submitted a second supplemental report on infringement that includes microphone response "polar plots" showing virtual microphone responses that purportedly model third-party software ██████████ running on Samsung's accused smartphones. Critically, these polar plots, and the opinions surrounding them, rely on faulty filter coefficients created out of whole cloth by Jawbone's expert, rather than actual coefficients used by Samsung's products. The opinions further ignore critical aspects of the functionality ████████████████. Separately, Jawbone's expert improperly opines ██████████████████ ██████ and on induced infringement, purporting to apply his expertise to understanding Samsung's intent. All of these opinions should be excluded as irrelevant and/or unreliable.

## II.    LEGAL STANDARD

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* requires an expert's testimony to be both relevant and reliable. 509 U.S. 579, 589-92 (1993). To be relevant, the expert testimony must "assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). Specifically, the proponent must "demonstrate that the expert's reasoning or methodology can be properly applied to the facts in issue." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). Reliability requires the proffering party to show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) those principles and methods have been applied reliably to the facts of the case. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). This requires some "objective, independent

validation" of the expert's methodology. *See Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (citing *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). When expert opinion "is connected to existing data only by the ipse dixit of the expert[,] [a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered" and decline to admit it. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997). If a challenged opinion "is fundamentally unsupported, then it offers no assistance to the jury." *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

### III.   DR. BROWN'S OPINIONS ON "RESPONSES OF VIRTUAL MICROPHONES" IN HIS SECOND SUPPLEMENTAL REPORT SHOULD BE EXCLUDED AS IRRELEVANT AND UNRELIABLE

Dr. Brown's opinions concerning the "Responses of Virtual Microphones in the Accused Phones" in Section 3 of the October 21, 2022, Supplemental Expert Report of Dr. D. Richard Brown Regarding Infringement (the "Brown Second Supp.," Ex. A) should be excluded because they rely on data unrelated to the software at issue in the case, rendering them irrelevant and unreliable for at least two separate reasons. First, Dr. Brown relies on erroneous filter coefficients, concocted by him, as the basis for his "polar plots" ██████████████ and his related opinions. Second, Dr. Brown relies on unsupported and contradictory assumptions about the ████████████████████ to arrive at his "polar plots" and related opinions.

### 1.    Dr. Brown's Opinions in Section 2 ██████████████████████

Jawbone's infringement allegations with respect to the Virtual Microphone Patents ██████ ████████████████████████████████████████████████████ ████████████████████████ *See* Ex. B, October 6, 2022, Supplemental Expert Report of Dr. D. Richard Brown Regarding Infringement (the "Brown First Supp.") at 80-82; Ex. C, November

2

17, 2022, Deposition Transcript of D. Richard Brown ("11/17 Brown Tr.") at 18:13-21, 38:21-39:2. In Section 2 of the Brown Second Supp., Jawbone's expert Dr. Brown explains his understanding of the operation ███████████████, describing in some detail his opinions ██████████████████████████.[1] *See generally* Brown Second Supp. at 1-7.

In contrast, Dr. Brown fails in Section 3 of the Brown Second Supp. ████████████ ██████████████████████ but nevertheless opines on infringement based on "polar plots"—a way of illustrating the directivity of microphones—that he generated ████████████ ███████████████ *Id.* at 7; *see generally id.* at 7-13.[2] In fact, Dr. Brown makes numerous uncited and unsupported assumptions, and relies on bald assertions about the understanding of a "POSITA" to arrive at his polar plots. *See generally* Brown Second Supp. at 7-13. Because, as set forth below, this section describes a system untethered from the actual ████████████ ████████████████████, and relies on the *ipse dixit* of Dr. Brown, the entirety of the opinions in Section 3 of the Brown Second Supp. should be excluded as irrelevant and unreliable.

> **2.      Dr. Brown Relies on Values He Concocted, Rendering His Opinions Irrelevant and Unreliable**

Samsung relies on tuning parameters to "tune" or customize the operation o████████████ ████████████████████████████████████, and produced those parameters to Jawbone. *See* 11/17 Brown Tr. at 53:16-54:11 (████████████████████ ████████████████████████████████████



---

[1] Samsung is not seeking to exclude the opinions set forth in Section 2 of Brown Second Supp., although they are at best incomplete.

[2] Polar plots are used, for example, in the Virtual Microphone Patents. *See, e.g.,* Ex. D, '691 patent at Figs. 9-13.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████.[3] Among these tuning parameter are ███████████████████████

███████████████████, as well as ████████████████████████

████████████████, described on page 5 of the Brown Second Supp. *See* Ex. F,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████; Brown Second Supp. at 5. In addition to Dr. Brown's discussion of ████

███████████████ in Section 2 of his report, he also wrote his own source code using a program

called Matlab to generate polar plots ████████████████████████████████████.

Brown Second Supp. at 7. These polar plots are intended to illustrate the responses of microphone

signals ████████████████████████████████████████████████

███████████. Dr. Brown's Matlab code operates based on the ████████████████████

███████████████████████████████████████████████████████

██████████████████████████ Brown Second Supp. at 7-8, 10. Dr. Brown relied

on the actual tuning parameter produced by Samsung corresponding to ██████████████████

███████████████████████████████████████████████████" *Id.* at

7. However, although Samsung produced tuning values corresponding to ██████████████████

███████████, Dr. Brown did not use them as h0 and h1 to generate his polar plots.

---

[3] Dr. Brown also separately extracted tuning parameters from Samsung phones he purchased.
Brown First Supp. at 167-168; 11/17 Brown Tr. at 106:10-14.

On page 10 of the Brown Second Supp., rather than relying on actual values used by Samsung, Dr. Brown ███████████████████████████████ that he used to make his polar plots.



**Brown Second Supp. at 10**

None of these arrays of values reflect *any* values actually used ███████████████████ ███████

First, for h0, Dr. Brown inexplicably decided to set all ███████████████████████ ██████████. *See id.* However, ████████████████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ██████. Dr. Brown acknowledges that his h0 values are "not exactly the same" as on any accused phones. 11/17 Brown Tr. at 149:1-6. Second, in contrast to the values chosen by Dr. Brown, Samsung uses ███████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ███████████████████████████████████████████ Dr. Brown acknowledged that he "calculated H1 using code [he] produced separately" and that, rather than setting the h1 coefficients according to actual parameters used by Samsung, he calculated h1 "based off" of the unsupported h0 values. 11/17 Brown Tr. at 150:18-151:2. Third, ████████████████████

████████████████████████████████████████████████████████

████████████ Dr. Brown again inserted his own seemingly arbitrary values, without providing any rationale. *See* Brown Second Supp. at 10.

When asked why he did not use actual values for his coefficients used to generate polar plots, Dr. Brown had no rational explanation. He testified: "I could have. I [sic] didn't -- didn't even occur to me. I was under some -- I had a limited amount of time to get this report done so I just went with the zeroes for those values, since they were insignificant." 11/17 Brown Tr. at 145:6-13. Dr. Brown further testified that █████████████████████████████████████

████████████████████████ *See id.* at 145:25-146:5. However, despite suggesting the values were "insignificant," Dr. Brown did not know for sure what the impact of using actual coefficient values would have been. *Id.* at 145:14-18. ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████ In fact, Samsung's expert used Dr. Brown's code modified with the actual coefficient values and taking into account the correct number of microphones to arrive at significantly different polar plots. Ex. G, Douglas Supplemental Report ("Douglas Supp.") at Appendix B.

In his prior reports, Dr. Brown pointed to actual Samsung tuning "parameters to initialize ████████████████████████████████████ (Brown First Supp. at 226), and listed the ████████████████████████████████████ where those parameters are set. *Id.* at 199-202. Despite Dr. Brown's prior awareness, review, and reliance on these tuning parameters, he nevertheless jettisons the actual filter initialization coefficients used in Samsung's accused phones,

6

as set in the tuning parameters, and instead "generates" and "computes" his own.[4] Brown Second Supp. at 10 (███████████████████████), (████████████████████ ██████) (emphases added). Despite having no connection to actual values used ████████ ██████████████████, Dr. Brown claims to be modeling the responses ██████████████ ████████████████████████████, as described in Section 2.

Ultimately, Dr. Brown appears to have conjured h0 and h1 out of thin air, plugging them into his own Matlab code without any explanation or justification. Using these unsupported h0, h1, and gscgain values, Dr. Brown's Matlab code generates polar plots, based on which Dr. Brown opines that Samsung meets a number of claim limitations of the Virtual Microphone Patents. *See* Brown Second Supp. at 12. As these opinions are premised on irrelevant data, they are irrelevant, unreliable and should be excluded.

Even if Dr. Brown were correct—which he is not—█████████████████████ ████████████ (11/17 Brown Tr. at 153:1-3, 11-14), they are still fundamentally based on data that does not reflect the actual coefficients used by Samsung. Similarly, █████████ ███████, Dr. Brown acknowledges that he produced them with his own code, and did not take them from any actual data in Samsung's accused phones. *Id.* at 156:9-157:6. Dr. Brown provides no explanation or reliable basis for using the values that he did in generating his polar plots.

Fundamentally, Dr. Brown's failure to use actual data ███████████████████ █████ renders his polar plots irrelevant, and they should therefore be excluded under *Daubert*. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (affirming exclusion of

---

[4] Dr. Brown further ignored ██████████████████████████████████████████ ███████████████████████████████████████████████████ Douglas Supp. at ¶¶ 8-15. █████████████████████████████████████ *Id.*

expert opinion where expert "failed to provide a 'relevant' link with the facts at issue"). Moreover, Dr. Brown's models are "not based on reliable principles and methods that can be accurately reproduced, examined, and challenged" and should be excluded as "nothing more than *ipse dixit* statements." *BMC Software, Inc. v. ServiceNow, Inc.*, No. 2:14-cv-903-JRG, 2016 WL 379620 at *2 (E.D. Tex. Feb. 1, 2016). His opinions in Section 3 of Brown Second Supp. should be excluded on this basis alone.

### 3. Dr. Brown Ignores the Adaptive Nature of the Goodix Software, Rendering His Opinions Unreliable

 meaning that it updates in real time based on the inputs and outputs. 11/17 Brown Tr. at 69:5-8 ("An adaptive filter is a filter that can sense something about the sound and adjust its coefficients to change where there's gain where there's attenuation."). This is undisputed. However, Dr. Brown ignores the adaptive nature ▮▮▮▮ ▮▮ in generating his polar plots. His oversight renders his opinions in Section 3 unreliable because, as explained below, Dr. Brown mixes and matches adaptivity when it suits him, and does not "adapt" ▮▮▮▮▮▮▮▮▮▮.

Dr. Brown acknowledges the importance of the adaptive nature ▮▮▮▮▮▮ ▮▮▮. According to Dr. Brown, "[a]daptive filters are used in noise suppression, because you don't always know what type of noise environment you'll be in, and you don't know where the noise will be coming from." *Id.* at 69:9-13. As Dr. Brown explained, ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ Brown Second Supp. at 6. Indeed, Dr. Brown testified that ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

████████. 11/17 Brown Tr. at 66:7-12, 69:23-70:6, 70:15-23. Similarly, Dr. Brown explained that ████████████████████████████████████████████████████████████████████ ██████████████████████████████████ Brown Second Supp. at 6-7; *see also id.* at 7 (███████ ██████████████████████████████████████████████████████████).

Despite acknowledging the importance of the adaptive nature ████████████████ ████████, Dr. Brown's opinions in Section 3 of the Brown Second Supp. treat it inconsistently without reason by adapting some filter coefficients and not adapting others.

Dr. Brown testified that ████████████████████████████████████████. 11/17 Brown Tr. at 66:7-12, 70:4-23; Brown Second Supp. at 10. Dr. Brown claims to have calculated h1 values (11/17 Brown Tr. at 144:3-4, 163:13-164:20) to represent "the filter coefficients *after adaptation*" (*id.* at 151:19-20), but, in contrast, his h0 values are intended to reflect *initialization* values (*id.* at 144:25-145:5, 152:8-18), which as explained above were also chosen by him. By fixing h0 and purportedly adapting h1 (*id.* at 153:1-3), Dr. Brown effectively uses his made-up h0 *initialization* coefficients in one adaptive filter (which is not adapted) and simulated h1 values reflecting the "solution *after adaptation*" based on those made-up h0 values in another. 11/17 Brown Tr. at 153:11-14. As Dr. Brown explained, ████████████████████████████████████ ████████████████████████████ *Id.* at 70:15-23. It is inconsistent to make one filter supposedly adaptive and the other reflect initialization. Dr. Brown provides no explanation or methodology for why he did this. In the end, the filter coefficients in Dr. Brown's unreliable analysis are in an impossible state where one is adapted and the other is at initialization, even though he knew the initializations of both filters or, alternatively, could have adapted both. Dr. Brown's inconsistent, unsupported treatment ████████████████████████████████████ renders

9

his opinions and conclusions entirely unreliable with respect to the accused products. As such, his opinions in Section 3 should be excluded.

### 4.   Dr. Brown Does Not Use █████████████████

With respect to █████████████ used in Section 3 of the Brown Second Supp., Dr. Brown does not use █████████████ as he explains must be used. Dr. Brown states that ████████████████████████████████████████████████████████

████████████████████████████████████████████████ Brown Second Supp. at 10; *see also* 11/17 Brown Tr. at 80:5-16. █████████████████

████████████████████████████████ However, Dr. Brown did not calculate a ██████████████ as required. Instead, Dr. Brown calculated ██████████████████

█████████████████ *Id.* He did this "calculation" in a single line of code and provides no justification of how that single line of code can approximate █████████████████

████████████████████████████████████████[6] *See id.*; *see also* Ex. H, 11/17 Brown Dep. Ex. 8 at Line 90. As a result, his "calculation" of ████████

███████████ to arrive at his polar plots is irrelevant and unreliable.

As Dr. Brown's opinions do not provide a reliable basis for his purported modeling of the Goodix code, they should be excluded.



---

[5] A complex number can be expressed in the form of a+bj, where $j^2 = -1$. Complex numbers allow solutions to all polynomial equations, even those that have no solutions in real numbers.

[6] Dr. Brown explains that ████████████████████████████████████████████ ████████████████████████████████████████████.

## IV.   DR.   BROWN'S   OPINIONS   REGARDING ███████████████ ███████████████████ SHOULD BE EXCLUDED AS CONCLUSORY AND STRICKEN AS UNTIMELY

In Sections 6.3.2 ("Commercial Success of Products Covered by the Claimed Inventions") and 6.3.3 ("The Claimed Inventions Were Praised by Others Skilled in The Art") of Dr. Brown's October 18, 2022, rebuttal report on validity, he broadly opines that "there is substantial evidence" that ████████████████████████████████████████████████████ *See* Ex. I, Brown Validity Report ("Brown Val. Report") at 64-66. To the extent Dr. Brown's opinion in this regard includes the asserted claims of the '080 and '357 patents, his opinion should be excluded as unreliable, unhelpful, and in any event untimely.

Dr. Brown's opinion that ████████████████████████████████████ is unreliable and unhelpful because it is devoid of analysis, purely conclusory, and derives only from his *ipse dixit*. Dr. Brown admitted that he did not include, and also *has not conducted*, any analysis or claim mapping with regarding *how* ████████████████████████████████ ██████████████████

> **Q:** So your report does not provide any opinions about which Jawbone headsets embody which asserted claims, right?
> **A:** Usually whether you discuss patents associated with a product, you don't distinguish the claims. You just say that this product is covered by these patents. ***So I haven't done any analysis mapping Jawbone headsets against the claims of the asserted patents***.
> …
> Q  If I were to ask you at trial ████████████████████████████ ██████████████ what is your answer going to be?
> …
> A. Sitting here today, I can't answer that.
> Q. And if I were to ask you at trial ████████████████████████ ██████████████, what is your answer going to be to the jury?
> …
> A  Same answer.

11

*See* Ex. J, November 18, 2022, Deposition Transcript of D. Richard Brown ("11/18 Brown Tr.") at 472:14-23, 474:14-25.

    Having admitted that he failed to conduct or provide any analysis of how ███████████ ███████████████████████████, Dr. Brown's opinions on this topic fail to meet the legal threshold for admissibility of expert testimony because they are unreliable and would not assist a trier of fact in understanding or deciding the issue. *See Daubert,* 509 U.S. at 589-92; *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015). Courts are not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co.*, 522 U.S. at146. When no other proof for an opinion is offered other than the fact that the expert said it, that opinion is fundamentally unsupported, and therefore "offers no expert assistance to the jury." *Guile*, 422 F.3dat 227 (quoting *Viterbo*, 826 F.2d at 422). Indeed, district courts across the country have excluded expert testimony on such grounds. *See, e.g.*, *Magna Mirrors of Am., Inc. v. SMR Auto. Mirrors UK Ltd.*, No. 1:17-cv-77, 2021 WL 8445572 at *2 (W.D. Mich. Sept. 7, 2021) (excluding plaintiff's expert's testimony on whether the Asserted Patents are "linked to the commercial success of the products" because he "disclosed nothing beyond his ipse dixit to support his conclusory opinion."); *TC Tech. L.L.C. v. Sprint Corp.*, No. 16-cv-153-RGA, 2019 WL 2515779 at *11 (D. Del. June 18, 2019) (excluding expert testimony because his opinions are "wholly conclusory"). As such, Dr. Brown's opinions on this topic should be excluded.

    For the foregoing reasons, this Court should exclude at least paragraphs 132-134 and 137-138 of Dr. Brown's rebuttal validity report to the extent they encompass an opinion that ███████ ████████████████████████████████

12

Even if it does not exclude under *Daubert*, the Court should strike Mr. Brown's opinion that ████████████████████████████████████████ as untimely. Jawbone never disclosed prior to Dr. Brown's validity report that ████████████████████████████ ██████████████████. Samsung elicited this information from Plaintiff during discovery in Interrogatory No. 14. *See* Ex. K, Samsung's First Set of ROGs at 9 ("Identify, on a claim-by-claim basis for each of the Asserted Claims, any products … that practiced, practices, embodied, or embodies any of the Asserted Claims…"). In response to Interrogatory No. 14, Jawbone did not disclose any contention that ████████████████████████████. *See* Ex. L, Jawbone's Fifth Suppl. Objections & Responses to Samsung's First Set of ROGs at 41 (███ ████████████████████████████████████████). Plaintiff's failure in this regard is unjustified and harmful because it foreclosed Samsung's opportunity to conduct further discovery on the issue. Thus, Dr. Brown's opinions in this regard should be stricken. *See Semcon IP Inc. v. MediaTek Inc.*, No. 2:16-cv-00437-JRG-RSP, 2018 WL 4501871, at \*4-5 (E.D. Tex. Feb. 28, 2018) (striking previously undisclosed secondary considerations opinions not disclosed in response to interrogatory); *see also* J. Gilstrap, Order, *Infernal Tech., L.L.C. v. Microsoft Corp.*, No. 2:18-cv-00144-JRG (E.D. Tex. June 28, 2019), ECF No. 102 (if a plaintiff "wishes to rely on its own Embodying Products … at trial, [it] ought to provide [defendant] with adequate notice of how those products practice the Asserted Claims" during fact discovery.").

## V.   DR. BROWN'S OPINIONS ON INDUCED INFRINGEMENT SHOULD BE EXCLUDED BECAUSE THEY FALL OUTSIDE HIS EXPERTISE AND ARE UNSUPPORTED

Dr. Brown's opinions that Samsung has induced infringement of the patents-in-suit should be excluded because they (1) go beyond his expertise; and (2) regurgitate an unsupported "understanding."

First, in his opening and first supplemental infringement reports, Dr. Brown opines on Samsung's "knowledge" and "intent" in allegedly inducing infringement. He states:

- "Samsung indirectly infringes the Asserted Claims by inducing others to make and use the Accused Products in the United States with the knowledge that, or while willfully blind to the fact that, such acts infringe the Asserted Patents." Ex. M, Sept. 19, 2022 Expert Report of Dr. D. Richard Brown Regarding Infringement ("Brown Inf. Report") at 286; Brown First Supp. at 297.

- "Samsung is aware that ordinary and expected usage of the Samsung Accused Products infringes the Asserted Patents, and has continued to distribute the Accused Products with the intent that customers continue to use the Samsung Accused Products in that manner." Brown Inf. Report at 287; Brown First Supp. at 298.

Dr. Brown is not qualified to opine "as to the subjective belief or intent of a corporate entity," which is a "classic jury question and not one for the experts." *Gree, Inc. v. Supercell Oy*, No. 2:19-cv-00071-JRG-RSP, 2020 WL 4059550 at *2 (E.D. Tex. July 20, 2020) (citations omitted); *see also id.* ("[I]ntent, motives or states of mind of corporations have no basis in any relevant body of knowledge or expertise.") (citing *Retractable Techs. Inc. v. Abbott Labs., Inc.*, No. 5:05-cv-157, 2010 WL 11531436, at *5 (E.D. Tex. June 18, 2010)). As such, these opinions in Section 3 of his original and first supplemental reports are improper and should be excluded.

In connection with his opinions on induced infringement, Dr. Brown also sets forth his "understand[ing]" regarding awareness of the patents-in-suit and Jawbone's allegations of "willful[] blind[ness]," but cites no evidence and does not appear to have independent opinions on these issues. Brown Inf. Report at 286-287; Brown First Supp. at 297-298. Dr. Brown should not be allowed to testify to these statements. *See Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *10 (E.D. Tex. Apr. 10, 2017) (noting that "the danger of allowing an expert to simply summarize evidence provided to the expert by the party that retained him is, of course, that the expert will become a vehicle through whom the party can summarize its case for the jury, with the imprimatur of the expert's asserted 'expertise'" and

excluding testimony). Here, Dr. Brown is not parroting evidence, but rather parroting mere conclusions provided by Jawbone's counsel. As such, he should not be allowed to testify to them.

## VI.   CONCLUSION

For the foregoing reasons, Dr. Brown's opinions in Section 3 of the Brown Second Supp., opinions ███████████████████████████████████, and opinions on induced infringement in the Brown Inf. Report and Brown First Supp. should be excluded.

Dated: November 23, 2022

Respectfully Submitted,

*/s/ Jin-Suk Park*
Jin-Suk Park
jin.park@arnoldporter.com
Paul Margulies
paul.margulies@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC  20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5555

Patrick C. Reidy
patrick.reidy@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
70 West Madison Street, Suite 4200
Chicago, IL  60602
Telephone: (312) 583-2424
Facsimile: (312) 583-2360

Ryan M. Nishimoto
ryan.nishimoto@arnoldporter.com
Daniel S. Shimell
daniel.shimell@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

-and-

Melissa Smith
melissa@gillamsmithlaw.com
**GILLAM & SMITH LLP**
303 South Washington Avenue
Marshall, TX  75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Attorneys for Samsung Electronics Co., Ltd. and
Samsung Electronics America, Inc.*

16

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rules CV-7(h) and (i), counsel for the Samsung Defendants met and conferred with counsel for the Plaintiff on November 22, 2022 in a good faith attempt to resolve the matters raised by this motion. Plaintiff stated it opposes the relief requested by this motion and no agreement was reached. Thus, these discussions have conclusively ended in an impasse and leave an open issue for the Court to resolve.

*/s/ Melissa R. Smith*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 23, 2022 to all counsel of record by email..

*/s/ Melissa R. Smith*

17