# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| JAWBONE INNOVATIONS, LLC, | § § § | Case No. 2:21-cv-00186-JRG-RSP |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | § § § § § | |
| Defendants. | § § | |

**PLAINTIFF JAWBONE INNOVATIONS, LLC'S *DAUBERT* MOTION**
**TO EXCLUDE THE TESTIMONY OF LAUREN KINDLER**

**TABLE OF CONTENTS**

**Page(s)**

I.   FACTUAL BACKGROUND ................................................................................................ 2

    A.   The Agreements ...................................................................................................... 2

    B.   AliphCom's Liquidation Value ............................................................................... 2

II.  LEGAL STANDARD ........................................................................................................ 3

III. ARGUMENT ..................................................................................................................... 5

    A.   Ms. Kindler's Damages Opinion Should Be Excluded Regarding the ▮▮▮▮▮▮▮▮▮▮ t .......................................................................................................... 5

    B.   Ms. Kindler's Damages Opinions Regarding the ▮▮▮▮▮▮▮▮ Should Be Excluded ................................................................................................................... 7

    C.   Ms. Kindler's Reliance on the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Should Be Excluded for Failure to Consider Other Reliable Documents .............................. 10

    D.   Ms. Kindler's Reliance on the Liquidation Value of AliphCom Should be Excluded ........................................................................................................... 11

IV.  CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Wi-LAN Inc.*,
   25 F.4th 960 (Fed. Cir. 2022) ............................................................................................10, 11

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ..................................................................................................................3

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010) .................................................................................................4

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ....................................................................................4, 10

*Knight v. Kirby Inland Marine Inc.*,
   482 F.3d 347 (5th Cir. 2007) ....................................................................................................3

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ..................................................................................................................3

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ....................................................................................4, 7, 10, 11

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) .................................................................................................4

*M2M Sols. LLC v. Motorola Sols., Inc.*,
   No. 12-33-RGA, 2016 WL 767900 (D. Del. Feb. 25, 2016) ....................................................4

*Mathis v. Exxon Corp.*,
   302 F.3d 448 (5th Cir. 2002) ....................................................................................................3

*Shockley v. Arcan, Inc.*,
   248 F.3d 1349 (Fed. Cir. 2001) .................................................................................................3

*Summit 6, LLC v. Samsung Elecs. Co.*,
   802 F.3d 1283 (Fed. Cir. 2015) ...............................................................................................11

*TV Interactive Data Corp. v. Sony Corp.*,
   929 F. Supp. 2d 1006 (N.D. Cal. 2013) ..............................................................................6, 10

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) .............................................................................................3, 7

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)..................................................................................................5

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010)..................................................................................................4

**Other Authorities**

Fed. R. Evid.702 ............................................................................................................................3

iii

Plaintiff Jawbone Innovations, LLC ("Jawbone" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this Motion to Exclude the Expert Testimony of Lauren R. Kindler.

Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.'s (collectively, "Samsung" or "Defendants") damages expert, Lauren R. Kindler, asserts that a reasonable royalty to compensate Jawbone for Samsung's infringement of the Asserted Patents is a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ However, Ms. Kindler's opinions suffer from numerous errors that render her analysis unreliable. Specifically with regard to the settlements, Ms. Kindler relies on two agreements: (1) the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which Ms. Kindler alleges is a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ contrary to the testimony of Samsung's own witness; and (2) the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for which Ms. Kindler fails to provide the proper economic comparability. Reliance on these settlement agreements is improper because Ms. Kindler failed to demonstrate technical and economic comparability.

Ms. Kindler also relies on the liquidation value of AliphCom, the original assignee of the Patents-in-Suit. Ms. Kindler alleges that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, when AliphCom underwent liquidation, but Ms. Kindler failed to account for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Accordingly, Ms. Kindler's opinions should be excluded as unreliable and untethered from the facts of the case.

I.  **FACTUAL BACKGROUND**

A.  **The Agreements**

Ms. Kindler's opinions include reliance on two license agreements: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 1, Kindler Report, ¶¶ 97, 100-101. Under the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, ¶ 101. According to ▮▮▮▮▮▮, Samsung's Rule 30(b)(6) witness on licensing topics, ▮▮▮▮▮▮▮▮▮▮. Ex. 2, ▮ Dep. 139:17-23, Aug. 19, 2022; *id.* at 96:20-21. ▮▮▮▮▮▮▮▮▮▮ *See* Ex. 1, Kindler Report, ¶ 10(i). ▮▮▮▮▮▮▮▮▮▮. *See id.*

B.  **AliphCom's Liquidation Value**

Ms. Kindler's damages calculation relies on the sale of AliphCom's "Consumer Electronics Audio patent portfolio (along with various other tangible and intangible assets, as discussed further below)" to JAWB Acquisition LLC for ▮▮▮▮, as part of the liquidation of AliphCom's assets. Ex. 1, Kindler Report, ¶ 10(h). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* Ms. Kindler asserts that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2

███████████████████████████████████████. *Id.* Ms. Kindler also alleges that this liquidation value is informative where "(i) a patent purchase conveys significantly more rights than a bare, non-exclusive license, (ii) the purchase included hundreds of U.S. and foreign patents and patent applications, and other assets beyond the Patents-in-Suit, and (iii) marketplace evidence indicates that ███████████████████████████████████████████████████████████████████████████████████████████████." *Id.* In addition, Ms. Kindler argues that "████████████████████████████████████████████████████████████████████████████████████████████████" *Id.*

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 requires that expert testimony be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court recognized the court's "gatekeeping role" in "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 579-80; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147-48 (1999). Moreover, "the expert's testimony must be reliable at each and every step or else it is inadmissible." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). Permitting testimony from an expert who makes assumptions "without any basis in economic reality" is reversible error. *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1363 (Fed. Cir. 2001). The party offering expert testimony bears the burden of proving that it meets all of the standards for admissibility. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002). If Samsung failed to "take into account the facts" of the case, its expert testimony "must be excluded." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315-16 (Fed. Cir. 2011).

3

In patent cases, parties often use a *Georgia-Pacific* hypothetical negotiation analysis. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). "The . . . hypothetical negotiation or the 'willing licensor-willing licensee' approach, attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). "The hypothetical negotiation also assumes that the asserted patent claims are valid and infringed." *Id.* at 1325. To be considered in a Georgia-Pacific analysis, a license must be economically comparable to the hypothetical negotiation license and cover comparable technology, with analysis to account for any differences. *E.g.*, *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) (holding that, when relying on past licenses, an expert "must account for differences in the technologies and economic circumstances of the contracting parties"). "The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded." *M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-33-RGA, 2016 WL 767900, at *8 (D. Del. Feb. 25, 2016).

"The hypothetical negotiation [] assumes that the asserted patent claims are valid and infringed." *Lucent Techs.*, 580 F.3d at 1325. Under the hypothetical negotiation framework, the parties are assumed to agree that the accused product at issue is infringed. *See Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010) (analyzing hypothetical negotiation framework by reference to a reasonable royalty to a license for accused devices); *see also LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 76-77 (Fed. Cir. 2012) (determining hypothetical negotiation date "with respect to those accused laptop computers").

III.  ARGUMENT

    A.  **Ms. Kindler's Damages Opinion Should Be Excluded Regarding the** ▮

Ms. Kindler's reliance on the ▮ should be excluded as unreliable. In reaching her conclusions regarding a reasonable royalty, Ms. Kindler relied on the ▮. A party that relies on "comparable" licenses must "account for differences in the technologies and economic circumstances of the contracting parties." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014).

Ms. Kindler's opinions regarding the ▮ are contrary to Samsung's position that the patents licensed under the ▮ do not relate to noise suppression. Specifically, Samsung's corporate designee testified that the ▮ is not technically comparable because the ▮. Ex. 2, ▮ Dep. 139:17-23; *see also id.* at 96:20-21 ("▮"). ▮ concluded that "▮" *Id.* at 139:23-24.

Despite Samsung's corporate understanding that the technology covered by the ▮ is not the same as the technology at issue in the present case, Ms. Kindler relied on the ▮ in her damages analysis. Ex. 1, Kindler Report, ¶ 102(a). Ms. Kindler cited the Dr. Scott Douglas report, Samsung's non-infringement expert, to conclude that "▮." *Id.*; *id.*, ¶ 102(b)(iii) ("▮").

5

According to Dr. Douglas, ███ relate to noise suppression technology. Ex. 3, Douglas Rep., ¶¶ 422-427.

Ms. Kindler's opinions relating to the ███ should be stricken because they rely on litigation-based expert opinion for technological comparability while ignoring Samsung's corporate knowledge to the contrary. Dr. Douglas's testimony directly contradicts the testimony of Samsung's own 30(b)(6) witness, which would more accurately reflect the hypothetical negotiation. Indeed, Ms. Kindler does not explain why Samsung would have relied on the testimony of a litigation expert hired seven years after the hypothetical negotiation and not on Samsung's own corporate knowledge of the ███ Ex. 4, Kindler Dep. Tr. at 193:10-196:13 ███ ? . . . A. No, and I don't think I would need to."). Nor does Ms. Kindler account for the fact that the four allegedly comparable patents comprise ███ licensed under the ███. In any event, it is undisputed that ███ which are not technically comparable. Therefore, Kindler's opinions regarding the ███ should be excluded. *See TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1016 (N.D. Cal. 2013) ("Thus, Mr. Hoffman admitted that the Sony licenses are for technologies that are not comparable to the technology of the patents-in-suit. Therefore, the Court will exclude Mr. Hoffman from referring to the royalty rates associated with the Sony licenses.");

6

*LaserDynamics,* 694 F.3d at 79 ("[A]lleging a loose or vague comparability between different technologies or licenses does not suffice.").

For Samsung to carry its burden, it must "sufficiently [tie the expert testimony on damages] to the facts of the case," *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315-16 (Fed. Cir. 2011). Here, Samsung has failed to do so where it relies on the noncomparable ▌ in an effort to decrease its damages amount based on the ▌. *See* Ex. 1, Kindler Rep., ¶¶ 101, 103 ▌

▌."). Accordingly, Ms. Kindler's opinions regarding the ▌ and reliance on the ▌ should be excluded.

**B.   Ms. Kindler's Damages Opinions Regarding the ▌ Should Be Excluded**

Ms. Kindler fails to conduct an analysis of the economic comparability of the ▌ ▌ Ms. Kindler's "analysis" consists of nothing more than a "counterbalancing" of the numerous economic factors she admits distinguishes the settlement from the hypothetical negotiation. The lack of sufficient analysis renders her opinions unreliable, and Ms. Kindler's opinions on the ▌ should be excluded.

First, Ms. Kindler admitted that she undertook no investigation into whether the Samsung Accused Products practice the technology covered by the ▌. Ex. 4, Kindler Dep. Tr. at 139:21-140:3. In fact, Ms. Kindler readily admitted that she had not established whether Samsung uses the technology in the ▌. *See id.* at 146:19-23 ▌

▌. Ms. Kindler also admitted that she did not request that Samsung's technical expert, Dr. Douglas, conduct an analysis of whether Samsung was using the technology in the ▌. *See id.* at 152:11-23 ▌

7

██████████████████████████████████████████████████████).

Ms. Kindler was also unable to testify regarding how much of Samsung's noise suppression technology is covered by the ████████. *Id.* at 149:2-15. In addition, Ms. Kindler concedes that whether the patented technologies are being used would ████████████████████████████████████████████████████████████████████████████." *Id.* at 149:16-150:15.

Ms. Kindler did not assess the incremental benefit to Samsung from its use of the technology of the ████████. *See id.* at 142:5-15 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████ While Ms. Kindler alleges that any incremental benefit to Samsung "would be captured within the comparability analysis," *Id.* at 143:12-16, she admits that she did not ask Dr. Douglas what the incremental benefit to Samsung is from the use of the ████████████████. *See id.* at 144:9-145:3 ████████████████████████████████████████████████████████████████████████████████████████████████████████████

Second, Ms. Kindler was unaware of whether ████ was using the patents in its own products, or whether Samsung marks its products with the ████████████. *See id.* at 140:4-8; 159:15-18. Ms. Kindler also did not assess whether Samsung believed it was infringing the ████████ and, if so, Samsung's opinion regarding the scope of its infringement. *Id.* at 164:22-165:17. Despite acknowledging that in the hypothetical negotiation, both parties agree on infringement, Ms. Kindler admitted that she did not ask Samsung whether it infringed any ████ ████ *Id.* at 165:18-166:9; 167:13-21 ████████████████████████████████████████

8

▮▮▮ Ms. Kindler also failed to ask Dr. Douglas or any Samsung witnesses whether the Samsung products are marked with the ▮▮▮. *See id.* at 140:9-141:2.  Rather, when asked whether she had asked anyone about marking the Samsung products with the ▮▮▮, Ms. Kindler provided irrelevant testimony regarding the running royalty structure instead. *See id.* at 141:7-19.

Third, Ms. Kindler admitted that ▮▮▮ did not prevail in the ▮▮▮ that she cites to in her opinions but opines that this fact would not have been considered in the hypothetical negotiation under the book of wisdom. *See id.* at 168:6-169:10.  Ms. Kindler could not explain why the ▮▮▮ executed after the hypothetical negotiation, is relevant to the hypothetical negotiation, but ▮▮▮. *See id.* at 169:11-23.

Fourth, Ms. Kindler did not consider the litigation costs of Samsung based on the settlement of the litigation between ▮▮▮ and Samsung.  Specifically, there was testimony that ▮▮▮ and Ms. Kindler stated that she considered this in her opinions, but had "no insight" into the cost of litigation in the present case. *Id.* at 181:20-182:9.  Further, Ms. Kindler testified that she ▮▮▮ *Id.* at 182:11-14.  Ms. Kindler was unsure of whether the payment for the ▮▮▮ *Id.* at 184:6-13.

Lastly, Ms. Kindler did not quantify the amounts by which certain factors either understate or overstate the value of the ▮▮▮ relative to the hypothetical negotiation. *See id.* at

9

187:12-188:4 █████████████████████████████

█ Ms. Kindler acknowledged that there are significant differences between the hypothetical negotiation, including ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████. *Id.* at 187:12-188:4.  However, Ms. Kindler conceded that she did not quantify each of the economic considerations in determining economic comparability, such as an adjustment for the continuing cost of litigation.  *Id.* at 188:9-17.  Rather, Ms. Kindler alleges that she conducted a counterbalancing of these considerations, without quantifying the effect of any of those factors on the license amount.  *See, e.g.*, Ex. 1, Kindler Rep., ¶ 99.  The failure to account for these factors in consideration of her analysis renders her opinions regarding the Andrea Agreement unreliable and should thus be excluded.

      **C.**    **Ms. Kindler's Reliance on the ███████████████ Should Be Excluded for Failure to Consider Other Reliable Documents**

To permit Ms. Kindler to rely on the ███████████████ as a basis for her damages opinions is contrary to Federal Circuit precedent.  *TV Interactive*, 929 F. Supp. 2d at 1016 ("The purpose of the *Georgia-Pacific* factors is to 'support' an expert's proposed royalty rate, and the Federal Circuit has clearly prohibited the use of noncomparable licenses to do so."); *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 973 (Fed. Cir. 2022) ("There is, therefore, no basis upon which to conclude based upon the evidence presented that either the Doro or Unnecto license is a meaningful proxy for the royalty rate of the '145 patent.").  There are several other reliable documents relevant to valuation, including the ██████████████████████████ that Ms. Kindler ignored in her analysis.  A settlement agreement, in contrast, is "far from being the 'most reliable license in [the] record.'" *LaserDynamics*, 694 F.3d at 77-78 ("Indeed, the BenQ

settlement agreement appears to be the least reliable license by a wide margin."). This "case is therefore well outside the limited scope of circumstances under which we deemed the settlement agreement [] admissible and probative." *Id.* at 78. Accordingly, Ms. Kindler's opinions relying on the ▮▮▮▮▮ should be excluded because her "methodological and factual errors in analyzing the comparable license agreements render [her] opinion untethered to the facts of this case." *Apple*, 25 F.4th at 974 (holding damages expert's testimony should have been excluded); *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("[A] reasonable or scientifically valid methodology is nonetheless unreliable where the data used is not sufficiently tied to the facts of the case.").

### D. Ms. Kindler's Reliance on the Liquidation Value of AliphCom Should be Excluded

Ms. Kindler's reliance on the ▮▮▮▮▮ should also be excluded as unreliable. As a preliminary matter, Ms. Kindler misstates the parties to the sale. Ms. Kindler alleged that ▮▮▮▮▮ Kindler Rep., ¶ 108, but the parties to the ▮▮▮▮▮ Ex. 5, Bergman Rep., ¶ 247. ▮▮▮▮▮. *Id.*, ¶ 252. Ms. Kindler's mischaracterization of the parties to the ▮▮ is material to the analysis of whether the ▮▮ is relevant to the hypothetical negotiation as the ▮▮▮▮▮—as the party to the hypothetical negotiation—would not be a willing seller, which is a required assumption underlying the hypothetical negotiation.

11

While acknowledging that the ▇ was executed during the time when ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." Ex. 1, Kindler Rep., ¶ 109(a). However, Ms. Kindler's reliance on the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Specifically, Mr. Bergman, Jawbone's damages expert, notes that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 5, Bergman Rep., ¶ 253. This reflects the urgency by which the ▇ was consummated during AliphCom's liquidation. Further, Mr. Bergman notes tha ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Id., ¶ 252. Ms. Kindler attempts to minimize such factors by suggesting that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ leading up to the date of the hypothetical negotiation. Ex.1 , Kindler Rep., ¶ 109(a).

Additionally, Ms. Kindler also acknowledges that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ one month after the hypothetical negotiation. *Id.* Ms. Kindler's opinions relying on the argument that AliphCom allegedly suffered from "financial struggles" at the time of the hypothetical negotiation fail to explain why ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to AliphCom if it was indeed suffering from such financial struggles. Accordingly, Ms. Kindler's attempts to extrapolate the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, when it underwent the liquidation process to the date of the hypothetical negotiation, are unreliable and contrary to the evidence.

12

Nonetheless, Ms. Kindler fails to explain how the liquidation would be sufficiently probative of the *value* of the Asserted Patents, where the ▮ reflects the ▮▮▮▮. The liquidation process would likely impact the parties' bargaining positions in a hypothetical negotiation and would not accurately reflect the vastly different bargaining position at the time of the hypothetical negotiation. Accordingly, Ms. Kindler's opinions regarding the ▮ are unreliable and should be excluded.

## IV. CONCLUSION

For the foregoing reasons, Jawbone respectfully requests that the Court exclude Ms. Kindler's opinions relying on the ▮▮▮▮ and the Liquidation Value of AliphCom.

Dated: November 23, 2022                                Respectfully submitted,

/s/ Peter Lambrianakos
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
Texas State Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
Email: jtruelove@mckoolsmith.com

**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF***
***JAWBONE INNOVATIONS, LLC***



15

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2022, a true and correct copy of the above and foregoing document has been served by email on all counsel of record.

                                                /s/ Peter Lambrianakos
                                                Peter Lambrianakos

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), the undersigned certifies that counsel for Plaintiff Jawbone Innovations LLC, met and conferred with counsel for Defendants on November 22, 2022. Defendants are opposed to the relief requested herein leaving an open issue for the Court to resolve.

                                                /s/ Peter Lambrianakos
                                                Peter Lambrianakos