# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| JAWBONE INNOVATIONS, LLC, | § § § | Case No. 2:21-cv-00186-JRG-RSP |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | § § § § § | |
| Defendants. | § § § | |

**PLAINTIFF JAWBONE INNOVATIONS, LLC'S
MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT**

**TABLE OF CONTENTS**

**Page(s)**

I. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ................................... 1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................ 1

III. LEGAL STANDARDS .................................................................................................... 4

    A. Summary Judgment ............................................................................................. 4

    B. Inequitable Conduct ............................................................................................. 5

IV. ARGUMENT ................................................................................................................... 6

    A. There is No Genuine Dispute of Material Fact Regarding Any Alleged Intentional Abandonment of the Applications for the '357 and '080 Patents .................................................................................................................. 6

    B. There is No Genuine Dispute of Material Fact Regarding the Alleged Failure to Disclose Prior Art References ............................................................. 10

V. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................................... 4

*Aristocrat Techs. Australia PTY Ltd. v. Int'l Game Tech.*,
   543 F.3d 657 (Fed. Cir. 2008) ....................................................................................... 9

*Cargill, Inc. v. Canbra Foods, Ltd.*,
   476 F.3d 1359 (Fed. Cir. 2007) ................................................................................ 5, 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................. 4, 5

*Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*,
   471 F.3d 1369 (Fed. Cir. 2006) ..................................................................................... 6

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ................................................................................... 11

*GFI, Inc. v. Franklin Corp.*,
   265 F.3d 1268 (Fed. Cir. 2001) ................................................................................... 12

*Grantley Patent Holdings, Ltd. v. Clear Channel Commcn's, Inc.*,
   540 F. Supp. 2d 724 (E.D. Tex. 2008) ............................................................... 5, 6, 13

*Honeywell Int'l, Inc. v. Universal Avionics Sys.*,
   488 F.3d 982 (Fed. Cir. 2007) ....................................................................................... 5

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*,
   439 F.3d 1335 (Fed. Cir. 2006) ............................................................................. 6, 13

*Magnivision, Inc. v. Bonneau Co.*,
   115 F.3d 956 (Fed. Cir. 1997) ....................................................................................... 9

*Molins PLC v. Textron, Inc.*,
   48 F.3d 1172 (Fed. Cir. 1995) ..................................................................................... 12

*Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*,
   731 F.3d 1239 (Fed. Cir. 2013) ................................................................................... 10

*In re Rosuvastatin Calcium Pat. Litig.*,
   703 F.3d 511 (Fed. Cir. 2012) ....................................................................................... 5

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011)..................................................................................................5

*Tinnus Enters., LLC v. Telebrands Corp.*,
   No. 6:15-CV-00551-RWS, 2019 WL 5617831 (E.D. Tex. Apr. 3, 2019)................................10

**Other Authorities**

37 C.F.R. 1.137(a)..........................................................................................................2, 3, 4

37 C.F.R. 3.73 ........................................................................................................................3

Plaintiff Jawbone Innovations, LLC ("Jawbone" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this Motion for Summary Judgment of No Inequitable Conduct. Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung" or "Defendants") claim that the Asserted Patents are unenforceable due to inequitable conduct on two grounds: (1) deception in the revival petitions of the applications that led to the '080 and '357 Patents, which the applicant purportedly intentionally abandoned; and (2) failure to disclose the "Van Compernolle" reference during prosecution of the Asserted Patents. Defendants have produced no evidence of materiality or intent to deceive, and therefore have not proven their inequitable conduct claims by clear and convincing evidence. Since there is no genuine dispute of material fact regarding the inequitable conduct claims, summary judgment of no inequitable conduct is warranted.

## I.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1. Whether Defendants have met their burden to prove, by clear and convincing evidence, the defense of inequitable conduct.

2. Whether there is a genuine dispute of material fact regarding inequitable conduct that precludes summary judgment.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1. U.S. Patent Application No. 13/948,160 (the "'160 Application") was filed on July 22, 2013. Ex. 1. The '160 Application led to the '080 Patent, which was issued on September 15, 2020. *Id.*

2. U.S. Patent Application No. 13/959,708 (the "'708 Application") was filed on August 5, 2013. Ex. 2. The '708 Application led to the '357 Patent, which was issued on September 14, 2021. *Id.*

3. The '160 and '708 Applications were initially filed by Scott Kokka of Kokka & Backus, P.C. Exs. 1 and 2.

4. On November 21, 2016, the Patent Office issued a Notice of Allowance and Fee(s) Due for the '708 Application and ordered any comments necessary be submitted by the applicant. Ex. 2, '357 File History, Notice of Allowance and Fees Due dated November 21, 2016.

5. On March 10, 2017, the Patent Office filed a Notice of Abandonment for the '708 Application for "failure to timely pay the required fee and publication fee," the issue fee and publication fee, if applicable, has not been received," and "no inventor's oath or declaration has been received." *Id.*, '357 FH, Notice of Abandonment dated March 10, 2017.

6. On January 30, 2019, a Petition for Revival of an Application for Patent Abandoned Unintentionally Under 37 C.F.R. 1.137(a) was filed and automatically granted. *Id.*, Petition for Revival, dated January 30, 2019. *Id.*

7. The Petition for Revival for the '708 Application was accompanied by the issue fee and petition fee payments. *Id.*

8. On August 10, 2020, a Petition for Revival of an Application for Patent Abandoned Unintentionally Under 37 C.F.R. 1.137(a) was filed with Substitute Statements in Lieu of an Oath or Declaration for Utility or Design Patent Application by the assignee. *Id.*, Petition for Revival, dated August 10, 2020. The Petition was dismissed on September 9, 2020 for failure to accompany the petition with "the required reply, unless previously filed." *Id.*, Petition Decision, dated September 9, 2020.

9. A Renewed Petition Under 37 C.F.R. 1.137(a) was filed on November 9, 2020, accompanied by a "substitute statement in lieu of an oath or declaration for a utility application for the sole inventor Gregory C. Burnett (substitute statement) signed by an officer of JAWB

Acquisition, LLC;" "Power of Attorney;" "Assignee showing ownership per 37 C.F.R. 3.73;" and "Corrected ADS." *Id.*, Renewed Petition, dated November 9, 2020. The Petition was dismissed on December 31, 2020 for failure to submit "a statement that the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 C.F.R. 1.137(a) was unintentional." *Id.*, Petition Decision, dated December 31, 2020.

10. A Renewed Petition was filed on March 30, 2021, which included affidavits from Michael Luna and Daniel Setton, which "provide details regarding any delays." *Id.*, Renewed Petition, dated March 30, 2021.

11. The Luna Affidavit "states that the above-referenced patent application originally went abandoned on February 22, 2017 due to unavailable funds" and "the original assignee ALIPHCOM (based on the assignment from the inventor to ALIPHCOM that was recorded with the USPTO'S assignment branch and accorded reel/frame no. 035352/0324) 'was shut down and an assignment for the benefit of creditors was initiated in June 2017.'" *Id.* The Setton Affidavit states JAWB Acquisition, LLC is the current assignee which further "provides details regarding 'the second period of delay.'" *Id.*

12. The Petition to Revive the '708 Application was granted on June 15, 2021. *Id.*, Petition Decision dated June 15, 2021.

13. On May 5, 2016, the Patent Office issued a Notice of Allowance and Fee(s) Due. Ex. 1.

14. On August 5, 2016, the applicant submitted an issue fee payment. *Id.*, '080 File History, Issue Fee Payment dated August 5, 2016.

15. On August 12, 2016, the Patent Office withdrew the Notice of Allowance and Fee(s) Due for failure to submit an inventor's oath or declaration for the '708 Application. *Id.*, '080 Patent FH, Notice of Allowance and Fee(s) Due dated August 12, 2016.

16. On December 1, 2016, the PTO filed a Notice of Abandonment for "failure to timely pay the required fee and publication fee;" and "[t]he issue fee and publication fee, if applicable, has not been received." *Id.*, Notice of Abandonment, dated December 1, 2016.

17. On August 10, 2020, a Petition for Revival of an Application for Patent Abandoned Unintentionally Under 37 C.F.R. 1.137(a) was filed and automatically granted. *Id.*, Petition for Revival, dated August 10, 2020; Petition Decision, dated August 10, 2020.

18. Dr. Burnett testified that the Van Compernolle reference was ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ Ex. 3, Burnett Tr. 224:13-14, 226:17-227:3, Sept. 7, 2022.

19. Dr. Burnett testified that Van Compernolle describes a ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ *Id.* at 222:1-6; 223:1-4.

20. Defendants have not submitted any evidence that Van Compernolle is not cumulative of any other reference before the examiner during prosecution of the Asserted Patents.

### III. LEGAL STANDARDS

#### A. Summary Judgment

Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 329 (1986). The party moving for summary judgment has the initial burden of demonstrating that there is no genuine issue as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The movant may

4

show that the undisputed material facts affirmatively establish a right to judgment or, alternatively, that the party with the burden of proof at trial has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex*, 477 U.S. at 322-23.

"The dispute . . . is genuine if the evidence such that a reasonable jury, properly instructed on the clear and convincing evidentiary standard, could return a verdict for Clear Channel on the issue of inequitable conduct." *Grantley Patent Holdings, Ltd. v. Clear Channel Commcn's, Inc.*, 540 F. Supp. 2d 724, 729 (E.D. Tex. 2008).

### B. Inequitable Conduct

In order to hold a patent unenforceable because of inequitable conduct, "there must be clear and convincing evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the U.S. Patent and Trademark Office." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007). "Misrepresentation or non-disclosure must meet 'threshold levels' of both materiality and intent." *Grantley* , 540 F. Supp. 2d at 728 (citing *Honeywell Int'l, Inc. v. Universal Avionics Sys.*, 488 F.3d 982, 999 (Fed. Cir. 2007)). If these thresholds are met, the Court must weigh the materiality and intent in order to determine "whether the equities warrant a conclusion that inequitable conduct occurred." *Id.* "Materiality and intent must be separately established." *In re Rosuvastatin Calcium Pat. Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012) (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011).

"Materiality is determined from the viewpoint of a reasonable patent examiner, and not the subjective beliefs of the patentee." *Cargill*, 476 F.3d at 1366. Where there is omission of a material reference to the PTO, there must be "clear and convincing evidence that the applicant made a deliberate decision to withhold a known material reference. . . . Beyond that, the applicant

5

must have withheld the material subject matter with the intent to deceive." *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369, 1382 (Fed. Cir. 2006). The applicant "must know, or should have known, of the materiality of the reference for an inference of intent." *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1341 (Fed. Cir. 2006).

## IV. ARGUMENT

Defendants bear the burden of proof of demonstrating their inequitable conduct claims at trial. However, summary judgment of no inequitable conduct is warranted where Defendants have not met their burden by clear and convincing evidence. *Grantley*, 540 F. Supp. 2d at 729 ("If Clear Channel fails to meet this burden, summary judgment is mandatory.").

### A. There is No Genuine Dispute of Material Fact Regarding Any Alleged Intentional Abandonment of the Applications for the '357 and '080 Patents

Defendants contend that the '357 and '080 Patents are unenforceable due to inequitable conduct. Specifically, Defendants allege that Kinza Hecht, the prosecution attorney of the '357 and '080 Patents, deceived the Patent Office in filing petitions to revive the '708 and '106 Applications (the "Revival Petitions"), knowing that the applications were intentionally abandoned. There is no genuine dispute of material fact that Defendants have failed to meet their burden of establishing inequitable conduct by clear and convincing evidence to preclude a finding of summary judgment.

Defendants can point to no evidence that AliphCom, JAWB Acquisition LLC, or their prosecution attorneys intentionally intended to abandon the applications for the '357 and '080 Patents. Rather, the affidavits of Mr. Luna and Mr. Setton establish that any abandonment was unintentional and the result of financial difficulties and liquidation. This evidence is uncontroverted and establishes that the abandonment of the applications that led to the '357 and '080 Patents was not intentional.

6

At the time the '708 and '106 Applications were prosecuted, AliphCom, the original assignee of the applications, was undergoing financial difficulty and was ultimately forced to liquidate in 2017. Mr. Luna, who was the Chief Technology Officer of AliphCom from December 2007 until it was shut down and an assignment for the benefit of creditors was initiated in June 2017, was responsible for the management of AliphCom's intellectual property portfolio. Ex. 2, 357 FH at Petition for review, March 30, 2021. At the time the '357 and '080 Patents were prosecuted, the law firm of Kokka and Backus, LLC was tasked with handling AliphCom's patent portfolio, including the '160 and '270 Applications. *Id.* However, between 2015 and 2017, AliphCom suffered "funding/financial issues." *Id.* Mr. Luna submits that he instructed Kokka and Backus, LLC and CPA Global to "employ procedures to ensure that patent applications (including the above-identified application) were, on a timely basis, diligently prosecuted and that fees were paid." *Id.* These procedures continued "until funds were no longer available to ALIPHCOM to pay Kokka and Backus, LLC and CPA Global for their fees." *Id.* As a result of AliphCom's financial issues, the applications for the '357 and '080 Patents were abandoned. *Id.* Mr. Luna further submits that "[a]t no point did [he] intend to allow the above-referenced patent application to go abandoned." *Id.*

Mr. Setton, the Chief Executive Officer of JAWB Acquisition LLC, who was responsible for the management of JAWB Acquisition LLC's intellectual property portfolio, stated that he became aware the patent applications went abandoned around Q2 2018. *Id.* Mr. Setton states that he "engaged CSC Global and the following law firms to assess JAWB Acquisition LLC's very robust patent portfolio: Envision IP, Dallal Firm and Myers Wolin." *Id.* Mr. Setton "tasked Envision IP to handle JAWB ACQUISITION LLC's patent portfolio and to revive various abandoned patent applications including the above-identified patent application." *Id.* Envision IP

was retained around Q2 2018 and instructed to revive various abandoned patent applications including the applications for the '357 and '080 Patents around Q4 2018 to Q1 2019. *Id.* In February 2019, Mr. Setton instructed Myers and Wolin to retain power of attorney for these applications, but this request was denied on April 17, 2019. *Id.* On June 3, 2020, Mr. Setton retained Hard IP LLC to revive the applications. *Id.* Hard IP LLC and Ms. Hecht filed the Revival Petitions. *Id.*

First, the Revival Petitions, supported by the Luna and Setton Affidavits, did not contain any misrepresentations. Ms. Hecht testified that, based upon her diligence and investigation, she did not have any reason to believe that the statements in the Luna Affidavit were incorrect or false and, ultimately, that the abandonment of the '357 and '080 Patent applications was unintentional. Ex. 4, Hecht Tr. at 98:22-25; 114:6-20, Sept. 1, 2022. The Luna and Setton Affidavits set forth the circumstances which resulted in abandonment and that such abandonment was not intentional.

Second, Defendants fail to point to any evidence that Ms. Hecht had intentionally deceived or knowingly misled the Patent Office in filing the Revival Petitions. To the contrary, Ms. Hecht testified regarding the general process of ascertaining whether an application is appropriate to petition for revival. Ex. 4, Hecht Tr. 61:14-62:1. Ms. Hecht testified that, as set forth in the MPEP, she reviewed what constitutes "unintentional delay." *Id.* Ms. Hecht also testified that she investigated the reasons for the "first period of delay" and determined the abandonment was due to "lack of funding, lack of money." *Id.* at 49:22-25; 50:2-14. Ms. Hecht's investigation included gathering information from the client and obtaining affidavits from Mr. Luna and Mr. Setton. *Id.* at 53:6-9; 63:9-13; 73:23-74:1 ("Q. Okay. And it's your understanding from your conversations with Mr. Luna and his affidavit, that the first period of delay was caused by Aliphcom's funding issues, correct? A. Yes."); 97:22-25 ("I had performed—you know, I had performed research,

8

including corresponding with the client to figure out the—the timeframe from the, you know, initial delay, until this time to determine that the delay was unintentional."). Accordingly, Ms. Hecht conducted an investigation as to whether the delay was unintentional within the meaning of the MPEP. *Id.* at 63:9-13; 112:22-25 ("Q. And [] upon your retention for Jawb Acquisition, you had conducted a review of that MPEP to make a determination regarding what is considered unintentional; is that correct? A. That's correct.").

While Jawbone disputes that any revival of the applications leading to the '357 and '080 Patent applications was improper, the Federal Circuit has nevertheless held that "improper revival" is not a defense under title 35. *Aristocrat Techs. Australia PTY Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 662 (Fed. Cir. 2008) ("Congress made it clear in various provisions of the statute when it intended to create a defense of invalidity or noninfringement, but indicated no such intention in the statutes pertaining to revival of abandoned applications."). "Absent proof of inequitable conduct, the examiner's or the applicant's absolute compliance with the internal rules of patent examination becomes irrelevant after the patent has issued." *Id.* (citing *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 960 (Fed. Cir. 1997)). The Federal Circuit also stated that "where the procedural irregularity involves an 'affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive,' it may rise to the level of inequitable conduct, and is redressible under that framework." *Id.* at 663. Here, Defendants fail to point to any proof of inequitable conduct. Rather, the testimony of Ms. Hecht, as well as the affidavits submitted in support, establish that any abandonment of the applications was unintentional. Like *Aristrocrat*, there is "no legitimate incentive for a patent applicant to intentionally abandon its application, much less to attempt to persuade the PTO to improperly revive it." *Id.* at 664. Further, "there is very little authority

9

regarding the consequence of an abandoned application when the patent subsequently issues and the application is later revived." *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-CV-00551-RWS, 2019 WL 5617831, at *4 (E.D. Tex. Apr. 3, 2019) ("Perhaps tellingly, the silence in the statute for such a limiting provision suggests there was no intent to limit enforcement of patent rights in that situation."); *see Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239, 1243 (Fed. Cir. 2013) ("Mr. Karasek's compliance with the standard PTO procedure for delayed payment, using the PTO form for delayed payment, does not provide clear and convincing evidence of withholding of material information with the intent to deceive the Director."). Without establishing that there was any inequitable conduct, "improper revival" alone is not a defense and Defendants have failed to meet its burden.

Because Defendants have failed to meet their burden of establishing inequitable conduct by clear and convincing evidence and there are no genuine disputes of material fact, summary judgment of no inequitable conduct of the '357 and '080 Patents is warranted.

### B. There is No Genuine Dispute of Material Fact Regarding the Alleged Failure to Disclose Prior Art References

Defendants also fail to meet their burden of establishing by clear and convincing evidence inequitable conduct for the alleged failure to disclose prior art references. To establish that a patent is unenforceable because of inequitable conduct, Defendants must show by clear and convincing evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the U.S. Patent and Trademark Office." *Cargill,* 476 F.3d at 1363.

First, there is no affirmative misrepresentation of material, failure to disclose material information, or submission of false material information. Defendants allege that Dr. Burnett was aware of the materiality of Van Compernolle and its non-cumulative nature. Dkt. 85, ¶ 126, p. 35.

10

However, Defendants fail to establish that Dr. Burnett was aware of the alleged materiality of Van Compernolle.  The only fact Defendants submit in support of their alleged inequitable conduct defense is that Dr. Burnett's inventor notebook contained a number of prior art references, including a reference to an article titled "An Adaptive Noise Canceller for Hearing Aids Using Two Nearby Microphones" ("Berghe").  Dkt. 85, ¶ 148.  Defendants argue that the Berghe article contains a citation to Van Compernolle and discusses the Van Compernolle reference, and Dr. Burnett "expressly identified the Van Compernolle citation in the Berghe article by circling the citation."  *Id.*  From this citation, Defendants conclude that Dr. Burnett would have known that Van Compernolle was material and non-cumulative to prior art cited in the 2003 and 2004 Information Disclosure Statements." *Id.*, ¶ 150.

However, Van Compernolle is not material.  Indeed, Dr. Burnett testified that while he could not recall why he circled the citation to the Van Compernolle article in his inventor notebook, ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Ex. 3, Burnett Tr. at 226:17-227:3.  Dr. Burnett also testified that Van Compernolle is ▅▅▅▅▅▅▅▅▅▅ of the inventions of the Asserted Patents.  *Id.* at 224:13-14.  In addition, Defendants failed to submit any evidence that Van Compernolle is not cumulative of any other reference before the examiner during prosecution of the Asserted Patents.  Indeed, Defendants are required to identify "the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329-30 (Fed. Cir. 2009) ("Such allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims.").  Defendants make no such showing that Van Compernolle disclosed any information that was not before the Examiner.  Rather, Defendants merely describe

11

the disclosures of Van Compernolle, without any showing that it was material or cumulative. Dr. Burnett testified that Van Compernolle discloses a ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ex. 3, Burnett Tr. at 222:1-6; 223:1-4. Accordingly, Defendants failed to submit any evidence that Dr. Burnett knew Van Compernolle was material or non-cumulative of references already before the Examiner.

Defendants also failed to identify what the alleged "twenty-eight other material references" they base their inequitable conduct claims on, nor does it provide any facts to support Dr. Burnett's knowledge of these unnamed references. Without knowledge of these references, it is difficult to conceive of how Dr. Burnett would be aware of their alleged materiality.

Second, Defendants cannot demonstrate an intent to deceive the Patent Office. "[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct." *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001). Dr. Burnett testified that it ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ex. 5, Burnett Dep. 435:10-21, Sept. 6, 2022. Further, Dr. Burnett testified that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *Id.* at 436:18-20. Accordingly, Dr. Burnett stated that he ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *Id.* at 436:21-24. Defendants can identify no *specific intent* to mislead or deceive the Patent Officer where Dr. Burnett clearly testified that any relevant materials were provided during prosecution of the Asserted Patents. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995) ("[T]he alleged conduct must not amount merely to the improper performance of, or omission of, an act one ought to have performed. Rather, clear and convincing evidence must prove that an applicant had the

12

specific intent to . . . mislead[] or deceive[] the PTO. In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference.").

Defendants cannot establish an intent to deceive the Patent Office where it offers *no* evidence on the issue of intent. *See Grantley*, 540 F. Supp. 2d at 732 ("Clear Channel's attempts to parlay this lone statement into intent to deceive the PTO is unavailing, especially in light of the fact that Clear Channel can offer no other evidence on the issue of intent."); *M. Eagles Tool*, 439 F.3d at 1343 ("The district court's finding of inequitable conduct based on the nondisclosure of the Model 220 essentially amounted to a finding of strict liability for nondisclosure. Such is not the law. Even if there were evidence of gross negligence in nondisclosure, which was not found, that would not necessarily constitute inequitable conduct."). Defendants fail to establish specific intent to deceive the Patent Office. Accordingly, Defendants fail to meet their burden of establishing inequitable conduct of the Asserted Patents based on an alleged failure to submit the Van Compernolle article to the Patent Office.

## V. CONCLUSION

For the foregoing reasons, Jawbone respectfully requests that the Court grant its Motion for Summary Judgment of No Inequitable Conduct.

Dated: November 23, 2022          Respectfully submitted,

         */s/ Peter Lambrianakos*
         Alfred R. Fabricant
         NY Bar No. 2219392
         Email: ffabricant@fabricantllp.com
         Peter Lambrianakos
         NY Bar No. 2894392
         Email: plambrianakos@fabricantllp.com
         Vincent J. Rubino, III
         NY Bar No. 4557435
         Email: vrubino@fabricantllp.com
         **FABRICANT LLP**

411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
Texas State Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF
JAWBONE INNOVATIONS, LLC***

14



## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2022, a true and correct copy of the above and foregoing document has been served by email on all counsel of record.

                                                */s/ Peter Lambrianakos*
                                                Peter Lambrianakos