# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| | § | |
| JAWBONE INNOVATIONS, LLC, | § | Case No. 2:21-cv-00186-JRG-RSP |
| | § | |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | ███████████████ |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD. and | § | |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF JAWBONE INNOVATIONS, LLC'S
MOTION FOR SUMMARY JUDGMENT OF
NO IMPROPER INVENTORSHIP AND LACK OF STANDING**

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ................................. 1

II.    STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................. 1

III.   LEGAL STANDARDS ................................................................................................. 5

      A.    Summary Judgment ........................................................................................ 5

      B.    Inventorship ................................................................................................... 6

      C.    Lack of Standing ............................................................................................ 6

IV.   ARGUMENT ............................................................................................................... 6

      A.    There is No Genuine Dispute of Material Fact Regarding Inventorship ............... 7

      B.    There is No Genuine Dispute of Material Fact Regarding Lack of
           Standing or Lack of Statutory Cause of Action to Assert the Asserted
           Patents ......................................................................................................... 11

V.    CONCLUSION ......................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allergan, Inc. v. Teva Pharms. USA, Inc.*,
 No. 2:15-cv-1455-WCB, 2017 WL 11572810 (E.D. Tex. Aug. 3, 2017) ................................9

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ...................................................................................................................5

*Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*,
 754 F.3d 272 (5th Cir. 2014) .....................................................................................................5

*Caterpillar Inc. v. Sturman Indus., Inc.*,
 387 F.3d 1358 (Fed. Cir. 2004) ..............................................................................................6, 8

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ...................................................................................................................5

*Cumberland Pharms. Inc. v. Mylan Institutional LLC*,
 846 F.3d 1213 (Fed. Cir. 2017) .................................................................................................8

*Dow Chemical Co. v. Nova Chemicals Corp. (Canada)*,
 458 F. App'x 910 (Fed. Cir. 2012) ..........................................................................................13

*Gemstar-TV Guide Int'l, Inc. v. ITC*,
 383 F.3d 1352 (Fed. Cir. 2004) ...............................................................................................10

*Hess v. Advanced Cardiovascular Sys., Inc.*,
 106 F.3d 976 (Fed. Cir. 1997) ...................................................................................................6

*Pandrol USA, LP v. Airboss Railway Prods., Inc.*,
 320 F.3d 1354 (Fed. Cir. 2003) ...............................................................................................13

*Pannu v. Iolab Corp.*,
 155 F.3d 1344 (Fed. Cir. 1998) .................................................................................................6

*SIPCO, LLC v. Aruba Networks, LLC*,
 No. 20-CV-537-MN, 2021 WL 2363689 (D. Del. June 9, 2021) .......................................6, 11

*Weaver v. Houchin*,
 467 F. App'x 878 (Fed. Cir. 2012) ..........................................................................................11

**Statutes**

35 U.S.C. §102(f) .............................................................................................................................7

35 U.S.C. § 256..................................................................................................................6

Plaintiff Jawbone Innovations, LLC ("Jawbone" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this Motion for Summary Judgment of No Improper Inventorship or Lack of Standing.

## I.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1.     Whether there is a genuine dispute of material fact regarding whether Drs. John Holzrichter or Larry Ng contributed in some significant manner to the conception or reduction to practice of any claim of any of the Asserted Patents.

2.     Whether there is a genuine dispute of material fact that Jawbone lacks all substantive rights to bring suit and to exclude others from practicing the claims of the Asserted Patents.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Jawbone alleges that the Samsung Accused Products infringe U.S. Patent Nos. 8,019,091 (the "'091 Patent"); 7,246,058 (the "'058 Patent"); 10,779,080 (the "'080 Patent"); 11,122,357 (the "'357 Patent"); 8,467,543 (the "'543 Patent"); and 8,503,691 (the "'691 Patent") (collectively, the "Asserted Patents").  Dkt. 21, ¶¶ 8, 10-14.

2.     On July 22, 2022, Defendants moved for leave to amend and file their Third Amended Answer, Defenses, and Counterclaims to Jawbone's First Amended Complaint.  *See* Dkt. 84.  Defendants' motion for leave remains pending.

3.     In their Third Amended Answer, Defenses, and Counterclaims, Defendants' defenses included improper inventorship and standing/statutory cause of action/nonjoinder.  *See* Dkt. 85 at 19 ("The '091, '058, and '543 Patents are invalid due to improper inventorship.  These patents omit inventors or co-inventors affiliated with Lawrence Livermore National Laboratory, Lawrence Livermore National Security, LLC, and/or the Regents of the University of California."); *id.* ("Due to improper inventorship, Plaintiff does not own or lacks all substantial

rights in the '091, '058, and '543 Patents.  Thus, Plaintiff either (1) lacks standing to assert the '091, '058, '543 Patents; or (2) lacks a statutory cause of action to assert the '091, '058, and '543 Patents without joining one or more third parties."); *id.* at 20 ("On information and belief, the chain of title regarding the '091, '072, '058, '080, '357, '543, and '691 Patents include defects indicating that Plaintiff does not hold proper title to these patents.  Thus, Plaintiff either (1) lacks standing to assert these patents; or (2) lacks a statutory cause of action to assert these patents without joining one or more third parties.").

4.      The '091 Patent, filed September 18, 2003 and issued September 13, 2011, names Gregory C. Burnett and Eric F. Breitfeller as inventors and Aliphcom, Inc. as the assignee. Dkt. 21-1.  The '091 Patent was subsequently assigned to Jawbone Innovations, LLC.  *See* Ex. 1.

5.      The '058 Patent, filed May 30, 2002 and issued July 17, 2007, names Gregory C. Burnett as the inventor and Aliph, Inc. as the assignee. Dkt. 21-3.  The '058 Patent was subsequently assigned to Jawbone Innovations, LLC.  *See* Ex. 1.

6.      The '080 Patent, filed July 22, 2013 and issued September 15, 2020, names Gregory C. Burnett as the inventor and JAWB Acquisition LLC as the assignee.  Dkt. 21-4.  The '080 Patent was subsequently assigned to Jawbone Innovations, LLC. *See* Ex. 1.

7.      The '357 Patent, filed August 5, 2013 and issued September 14, 2021, names Gregory C. Burnett as an inventor and Jawbone Innovations, LLC as the assignee. Dkt. 21-5.

8.      The '543 Patent, filed March 27, 2003 and issued June 18, 2013, names Gregory C. Burnett, Nicolas J. Petit, Alexander M. Asseily, and Andrew E. Einaudi as the inventors and AliphCom as the assignee.  Dkt. 21-6.  The '543 Patent was subsequently assigned to Jawbone Innovations, LLC. *See* Ex. 1.

9.      The '691 Patent, filed June 13, 2008 and issued August 6, 2013, names Gregory C. Burnett as the inventor and AliphCom as the assignee. Dkt. 21-7.   The '691 Patent was subsequently assigned to Jawbone Innovations, LLC. *See* Ex. 1.

10.     Dr. Burnett's dissertation, *The Physiological Basis of Glottal Electromagnetic Micropower Sensors (GEMS) and Their Use in Defining an Excitation Function for the Human Vocal Tract*, was published in January 1999. Ex. 2.

11.     Dr. Burnett's dissertation was cited as prior art on the Asserted Patents. *See, e.g.*, Dkts. 21-1, 21-3, and 21-6.

12.     Drs. Holzrichter and Ng supervised Dr. Burnett's work on the glottal electromagnetic micropower sensor ("GEMS") during his dissertation. Ex. 3, Holzrichter Tr. at 38:21-39:7; 56:14-57:15; 58:2-21, June 29, 2022; Ex. 4, Ng Tr. at 181:2-5, June 23, 2022 ████



████

13.     ████████████████████████████████████████ Ex. 4, Ng Tr. at 181:16-21.

14.     ████████████████████████████████████████

████████████████████████████████████████

██████████████████. *See* Ex. 4, Ng Tr. at 184:11-185:5.

15.     Dr. Burnett's thesis acknowledges Drs. Holzrichter and Ng's contributions.  Ex. 2. Dr. Burnett's dissertation states: "The invention of this new type of micropower, radar-like sensors [sic] by Tom McEwan, the idea of the application of the sensor to speech by John Holzrichter and Larry Ng, and my work to understand the physiological basis of the return will affect our lives in

many ways. . . . . First, the ideas are quite recent, as John Holzrichter first envisioned the use of the GEMS for speech applications in 1994." *See id.* at xxv, xxviii.

16.     Drs. Holzrichter signed the first page of Dr. Burnett's dissertation. *Id.* at i.

17.     Drs. Holzrichter and Ng authored papers cited as prior art on the Asserted Patents: (1) *Denoising of Human Speech Using Combined Acoustic and EM Sensor Signal Processing*, 2000 IEEE Intl Conf. on Acoustics Speech and Signal Processing; and (2) *Speaker Verification Using Combined Acoustic and EM Sensor Signal Processing*, ICASSP-2001, Salt Lake City, USA. Dkts. 21-1, 21-3, and 21-6.



18.     While Dr. Holzrichter testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 3, Holzrichter Tr. at 28:2-10; 67:15-68:7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 4, Ng Tr. at 153:14-20.

20.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 5, Burnett Tr. at 13:25-14:14, Sept. 7, 2022.

21.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 4, Ng Tr. at 171:2-7.

22.     Jawbone is the owner of all right, title, and interest to the Asserted Patents.  *See* Dkt. 21, ¶ 15; Ex. 1.

### III.    LEGAL STANDARDS

#### A.    Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 329 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.

The non-moving party cannot "rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248.  "Summary judgment is appropriate if the nonmovant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (citing *Celotex*, 477 U.S. at 322).  The movant may establish that the other party has the burden of proof at trial and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case."  *Celotex*, 477 U.S. at 322-23.  "[T]he burden on the moving party may be discharged by 'showing'—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325.

### B.      Inventorship

"Patent issuance creates a presumption that the named inventors are the true and only inventors."  *Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004).  "To rebut this presumption, a district court must find ***clear and convincing evidence*** that the alleged unnamed inventor was in fact a co-inventor before correcting inventorship under 35 U.S.C. § 256."  *Id.* (emphasis added) (citing *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998)).

A party attacking a patent on the grounds that it fails to name a true inventor must prove that claim by clear and convincing evidence.  *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997).  A joint inventor must "(1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art."  *Pannu*, 155 F.3d at 1351.

### C.      Lack of Standing

To have standing to assert patent infringement, a "plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit."  *SIPCO, LLC v. Aruba Networks, LLC*, No. 20-CV-537-MN, 2021 WL 2363689, at *2 (D. Del. June 9, 2021) (citing *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010)).  "[A]n assignee holds title to a patent and may sue for infringement without further permission or clearance."  *Id.* (citing *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996)).

## IV.   ARGUMENT

In their Third Amended Answer, Defenses, and Counterclaims to Jawbone's First Amended Complaint, Defendants assert the affirmative defense of improper inventorship for the '091, '058, and '543 Patents.  Dkt. 85 at 19.  Defendants claim that the '091, '058, and '543 Patents

omit inventors or co-inventors affiliated with Lawrence Livermore National Laboratory, Lawrence Livermore National Security, LLC, and/or the Regents of the University of California and are therefore, invalid under 35 U.S.C. §102(f) for failing to name the correct inventors. *See id*. Defendants argue that due to improper inventorship, "Plaintiff either does not own or lacks all substantial rights in the '091, '058, and '543 Patents" and, therefore, lacks standing or lacks a statutory cause of action to assert the '091, '058, and '543 Patents. *Id.*.  In addition, Defendants allege lack of standing or statutory cause of action to assert the '091, '058, '080, '357, '543, and '691 Patents due to "defects indicating that Plaintiff does not hold proper title to these patents." *Id.* at 20.

The record demonstrates that Jawbone is the rightful and sole assignee of the Asserted Patents.   There is no evidence in the record that any other party, including Dr. Ng or Dr. Holzrichter, was improperly omitted from inventorship of the Asserted Patents.  There is no evidence that Dr. Holzrichter or Dr. Ng participated in the conception of any claim of the Asserted Patents.  Rather, they are mere prior artists whose work was cited on the face of the Asserted Patents.  Accordingly, Jawbone is entitled to summary judgment of no improper inventorship and no lack of standing.

**A.     There is No Genuine Dispute of Material Fact Regarding Inventorship**

Defendants have failed to establish that there is a genuine dispute of material fact regarding inventorship.  The Asserted Patents properly identify inventors Gregory C. Burnett, Nicolas J. Petit, Eric F. Breitfeller, Alexander M. Asseily, and/or Andrew E. Einaudi as the inventors of the Asserted Patents.  *See, e.g.*, Dkts. 21-1, 21-3, and 21-6.  There are no other inventors that purportedly should have been named on the Asserted Patents.

7

"Patent issuance creates a presumption that the named inventors are the true and only inventors." *Caterpillar*, 387 F.3d at 1377; *Cumberland Pharms. Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1218 (Fed. Cir. 2017) ("In inventorship disputes, 'the inventors named on the issued patent are presumed to be correct.'").  The Asserted Patents were issued to and correctly named Dr. Burnett, and/or Messrs. Petit, Breitfeller, Asseily, and Einaudi.

The two individuals whom Defendants claim should have been named as inventors, John Holzrichter and Larry Ng, are prior artists who authored papers cited as prior art and worked with Dr. Burnett on his doctoral thesis years before he invented his noise suppression systems.

The evidence of record unquestionably demonstrates that the correct inventors have been named and listed on the face of each of the Asserted Patents, and there is no real dispute otherwise. Defendants' theory that John Holzrichter and/or others at Lawrence Livermore National Laboratory ("LLNL") should have been named as inventors on the Asserted Patents is unsupported by the record.  The '091, '543, and '058 Patents clearly cite to Dr. Burnett's dissertation and papers authored Drs. Ng and Holzrichter:

OTHER PUBLICATIONS

L.C. Ng et al.: "Denoising of Human Speech Using Combined Acoustic and EM Sensor Signal Processing", 2000 IEEE Intl Conf on Acoustics Speech and Signal Processing. Proceedings (Cat. No. 00CH37100), Istanbul, Turkey, Jun. 5-9, 2000 XP002186255, ISBN 0-7803-6293-4.

S. Affes et al.: "A Signal Subspace Tracking Algorithm for Microphone Array Processing of Speech". IEEE Transactions on Speech and Audio Processing, N.Y, USA vol. 5, No. 5, Sep. 1, 1997. XP000774303, ISBN 1063-6676.

Gregory C. Burnett: "The Physiological Basis of Glottal Electromagnetic Micropower Sensors (GEMS) and Their Use in Defining an Excitation Function for the Human Vocal Tract", Dissertation. University of California at Davis, Jan. 1999, USA.

L.C. Ng et al.: "Speaker Verification Using Combined Acoustic and EM Sensor Signal Processing", ICASSP-2001, Salt Lake City, USA.

A. Hussain: "Intelligibility Assessment of a Multi-Band Speech Enhancement Scheme", Proceedings IEEE Intl. Conf. on Acoustics, Speech & Signal Processing (ICASSP-2000). Istanbul, Turkey, Jun. 2000.

* cited by examiner                                                    [1]

Dr. Burnett's thesis acknowledges Dr. Holzrichter's contributions.  For example, Dr. Burnett's thesis states: "The invention of this new type of micropower, radar-like sensors [sic] by Tom McEwan, the idea of the application of the sensor to speech by John Holzrichter and Larry Ng, and my work to understand the physiological basis of the return will affect our lives in many ways. . . . First, the ideas are quite recent, as John Holzrichter first envisioned the use of the GEMS for speech applications in 1994." *See* Dkt. 2 at xxv, xxviii.  This is consistent with the testimony of Drs. Ng and Holzrichter. *See, e.g.*, Ex. 4, Ng Transcript at 21:14-17; Ex. 3, Holzrichter Tr. at 38:21-39:7; 56:14-57:15; 58:2-21; *see also Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-cv-1455-WCB, 2017 WL 11572810, at *4 (E.D. Tex. Aug. 3, 2017) ("Viewed in its entirety, Dr. Ding's deposition testimony does not entitle the defendants to summary judgment.").

In addition, that Drs. Ng and Holzrichter supervised Dr. Burnett's work on GEMS before he conceived of the claimed inventions is irrelevant to inventorship, particularly where Dr. Burnett

---

[1] Dkt. 21-1, '091 Patent at 2.

references Dr. Ng as his "supervisor and group leader." Ex. 2 at v.  Further, Dr. Holzrichter signed the first page of Dr. Burnett's thesis.  *See id.* at i.  Whether Drs. Ng and Holzrichter supervised Dr. Burnett, or even reviewed his thesis, does not create a genuine dispute of material fact regarding ownership.  Defendants cannot show that any LLNL employee contributes to anything that was not in the prior art.  *See Gemstar-TV Guide Int'l, Inc. v. ITC*, 383 F.3d 1352, 1383 (Fed. Cir. 2004) (holding that putative co-inventor must show that their "contributions exceeded the prior art").  Defendants' allegations are contradicted by the '091, '058, and '543 Patents which each cite to Drs. Ng and Holzrichter's work as prior art.  *See, e.g.*, Dkts. 21-1, 21-3, and 21-6.  Indeed, Defendants have taken the position that the same paper that establishes Drs. Ng and Holzrichter's contributions to the inventions are prior art, as set forth in Defendants' expert report regarding invalidity.

There is no dispute that Drs. Ng and Holzrichter supervised Dr. Burnett's work at LLNL. The testimony cited by Defendants does not show otherwise.  *See, e.g.*, Ex. 6, Samsung's Resps. to Jawbone's Fourth Set of Interrogs. at 10 ██████████████████████████████████ ██████████████████████████████████ *id.* ████████████ ██████████████████████████████. While Defendants rely on representations that Dr. Ng provided "suggestions" and Dr. Holzrichter "made a lot of corrections" to Dr. Burnett's dissertation, these statements alone do not evidence that Drs. Ng and Holzrichter should have been named as inventors.  Moreover, Dr. Holzrichter's testimony that he was "disappointed by their progress" and Dr. Burnett allegedly had "no new ideas" at a conference is irrelevant to inventorship of the Asserted Patents. *Id.* at 12.

Dr. Burnett, a named inventor on each of the Asserted Patents, testified that Dr. Ng was his boss and thesis advisor, and that they worked on GEMS together.  Dr. Burnett also testified that

███████████████████████████████████████████████████████████

███████████████████████████████████  Ex. 5, Burnett Tr. at

17:8-13.   Dr. Burnett  further  testified  that  ██████████████████████████████████

███████████████████████████████████████.  *Id.* at 18:24-19:6.  Any

alleged testimony that Drs. Ng and Holzrichter purportedly contributed to the inventions is not

corroborated by any evidence.  *See, e.g.*, *Weaver v. Houchin*, 467 F. App'x 878, 881 (Fed. Cir.

2012) ("Without legally sufficient corroboration of his testimony, Mr. Weaver cannot establish

that he should be a co-inventor on the patent. . . . As a result, the district court correctly held that

summary judgment was appropriate in this case.").

Defendant has failed to submit clear and convincing evidence that there are any purported

unnamed inventors or that there are *any* inventorship issues with respect to the Asserted Patents.

Accordingly, there is no genuine dispute of material fact that there are no inventorship issues and

summary judgment should be granted as to no inventorship issues.

**B.    There is No Genuine Dispute of Material Fact Regarding Lack of Standing or Lack of Statutory Cause of Action to Assert the Asserted Patents**

As a preliminary matter, Defendants have not submitted a motion to dismiss for lack of

standing or lack of a statutory cause of action to assert the Asserted Patents.  The Asserted Patents

identify Jawbone as the assignee of the Asserted Patents and Jawbone is the owner of all right,

title, and interest in and to the Asserted Patents. Ex. 1.  Accordingly, Jawbone holds enforceable

title to the Asserted Patents since the inception of the present suit.  *See SIPCO,* 2021 WL 2363689,

at *2 ("In light of SIPCO's factual allegations and the public filings, the Court reasonably infers

that the '304 patent was assigned to SIPCO at issuance.  Defendants, therefore, fail to show as a

matter of law that SIPCO lacked standing to assert the '304 patent.").

However, aside from Defendants' speculation that some LLNL employee or employees allegedly conceived of or contributed to the inventions of the Asserted Patents, Defendants offer no evidence, let alone the clear and convincing evidence to meet their burden. Moreover, Defendants' allegation that there are purported defects in the chain of title are unsupported. Rather, Defendants point to a typographical error in one assignment document, which lists the assignee as AliphCom, Inc. instead of AliphCom. This typographical error was later corrected through corrective assignments, with the USPTO explaining that the original assignments were in error. *See* Ex. 7. Defendants cite to the same statements in their discovery responses. *See* Ex. 6 14

█████████████████████████████████████████████████████████████████

████████████████████████████ Jawbone has maintained that Aliph Brands has not, and has never, acquired the Asserted Patents. Similarly, Defendants argue that the "chain of title purportedly traces back through three entities to a California entity named AliphCom d/b/a Jawbone." *Id.* While Defendants argue that "additional discovery as to this issue will lead to evidence indicating that Jawbone either lacks title to/ownership of the asserted patents (i.e., standing) or lacks all substantial rights in the patents," Defendants have not supplemented their discovery responses nor identified any alleged discovery regarding the purported lack of standing. *Id.* Nonetheless, it is insufficient to support Defendants' unfounded speculation regarding a defect in the chain of title and Defendants can point to no other evidence that establishes a typographical error to be evidence of a lack of ownership.

Moreover, Defendants' argument is unsupported by the public record. There is no AliphCom, Inc. in the California Secretary of State "Business Search" page. Defendants cannot point to the existence of AliphCom, Inc., other than the typographical error. Further, a marketing

presentation drafted by a non-party is also insufficient to carry Defendants' burden of establishing by clear and convincing evidence that a standing issue exists.

It is undisputed that in 2017, AliphCom conveyed the patents to AliphCom (Assignment for the Benefit of Creditors). Ex. 8.  The patents were subsequently conveyed to JAWB Acquisition LLC.  Ex. 9.  JAWB Acquisition LLC later transferred the patents to JI Audio Holdings LLC. Ex. 10.  JI Audio Holdings LLC then transferred the patents to Jawbone Innovations, LLC, the Plaintiff in this case and the sole and exclusive assignee of the Asserted Patents.  This assignment is evidenced by the underlying agreements that transferred the patents which show that no other party has owned or been assigned the Asserted Patents.  Exs. 1, 8-10.  The chain of title is clear based on the assignments, as well as the assignments recorded with the USPTO.  *See Pandrol USA, LP v. Airboss Railway Prods., Inc.*, 320 F.3d 1354, 1368 (Fed. Cir. 2003) (patentee had standing where record evidence showed a signed and witnessed confirmation of an assignment which indicated plaintiff was assigned patent before suit commenced, and the assignment was recorded in the Patent Office); *Dow Chemical Co. v. Nova Chemicals Corp. (Canada)*, 458 F. App'x 910, 912 (Fed. Cir. 2012) ("There is no dispute that Dow is indeed the original assignee of the patents in suit and record title holder at the U.S. Patent and Trademark Office ("PTO").  Therefore Dow is the presumed owner of the patents in suit.").

## V.     CONCLUSION

For the foregoing reasons, Jawbone respectfully requests that the Court grant its Motion for Summary Judgment dismissing Defendants' Twenty-Fifth, Twenty-Sixth, and Twenty-Seventh Defenses of Improper Inventorship and Standing/Statutory Cause of Action/NonJoinder.

Dated:  November 23, 2022

/s/ Vincent J. Rubino, III
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos

NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
Texas State Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF***
***JAWBONE INNOVATIONS, LLC***



## **CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2022, a true and correct copy of the above and

foregoing document has been served by email on all counsel of record.

*/s/ Peter Lambrianakos*
Peter Lambrianakos