## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| JAWBONE INNOVATIONS, LLC, | § | Case No. 2:21-cv-00186-JRG-RSP |
| | § | |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | ██████████████ |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD. and | § | |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFF JAWBONE INNOVATIONS, LLC'S
## MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. SCOTT C. DOUGLAS

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.  INTROUDCTION AND BACKGROUND ..................................................................... 1

II.  LEGAL STANDARDS ............................................................................................... 1

    A.  Expert Testimony Contradicting the Court's Claim Constructions is Improper.......................................................................................................... 1

III.  ARGUMENT .............................................................................................................. 2

    A.  Dr. Douglas' Opinions Regarding "Transfer Function" Terms Should Be Excluded ...................................................................................................... 2

    B.  Dr. Douglas Opinions Regarding Transfer Functions Generated "When Voicing Activity is Absent" Should be Excluded.................................... 5

    C.  Dr. Douglas' Opinions Regarding the "subband" Limitations Should Be Excluded ...................................................................................................... 7

    D.  Dr. Douglas' Opinions Regarding the Terms "a time period" / "the time period" Should Be Excluded........................................................................ 8

    E.  Dr. Douglas' Opinions Regarding the "virtual microphone," "linear response," and "signal processor … operative to combine the first and second microphone signals by filtering and summing in the time domain" limitations should be excluded............................................................. 10

    F.  Dr. Douglas' Opinions Regarding the "null" Limitations Should Be Excluded ...................................................................................................... 12

IV.  CONCLUSION............................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*,
  No. 2:13-cv-1112-JRG, 2015 WL 4944514 (E.D. Tex. Aug. 19, 2015) ..................................2

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ..............................................................................................................2

*EMC Corp. v. Pure Storage, Inc.*,
  154 F. Supp. 3d 81 (D. Del. 2016) .......................................................................................2

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)............................................................................................2

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
  589 F.3d 1179 (Fed. Cir. 2009)............................................................................................2

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ..............................................................................................................2

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*,
  No. 6:11-cv-492-RWS-KNM, 2017 WL 4020591 (E.D. Tex. Sept. 13, 2017).......................2

*SunTiger, Inc. v. Blublocker Corp.*,
  189 F.3d 1327 (Fed.Cir.1999)........................................................................................3, 10

## I.      INTROUDCTION AND BACKGROUND

Plaintiff Jawbone Innovations, LLC ("Jawbone" or "Plaintiff") respectfully submits this Motion to Exclude Certain Opinions of Dr. Scott C. Douglas. Dr. Scott C. Douglas submitted his expert report regarding non-infringement of the asserted patents on October 18, 2022 (Ex. 1).

Dr. Douglas' report is replete with improper and unreliable opinions that generally fit into three categories: (1) opinions which deviate from the constructions of construed claim terms; (2) opinions which attempt to read new limitations into the plain and ordinary meaning of unconstrued claim terms without any legitimate basis; and (3) opinions which misapply the law to argue for non-infringement based on the presence of unclaimed elements, particularly unrelated signal processing steps carried out before or after the signal processing accused of infringement. Dr. Douglas' opinions to that effect, detailed below, are unreliable, irrelevant, and unhelpful to the jury. Moreover, Dr. Douglas adopts interpretations of virtually every claim term which no reasonable litigant would contend are within the scope of agreed constructions or plain and ordinary meanings, and which on their face render the claims *impossible* to satisfy. Samsung failed to propose any such constructions during claim construction, and therefore waived them. Dr. Douglas' arguments should further be excluded on that basis.

Jawbone therefore respectfully requests that the Court preclude Dr. Douglas from giving those opinions, and strike his report at paragraphs 163-168, 170-181, 195-204, 247, 260-264, 269-276, 287-296, and 302-304.

## II.     LEGAL STANDARDS

### A.      Expert Testimony Contradicting the Court's Claim Constructions is Improper

Fed. R. Evid. 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular

expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993).

An expert's infringement opinion must use "the claim construction adopted by the court." *Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009) (citation omitted). "Expert testimony based on an impermissible claim construction is properly excluded as irrelevant and on the basis that the evidence could confuse the jury." *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492-RWS-KNM, 2017 WL 4020591, at *3 (E.D. Tex. Sept. 13, 2017) (citing *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016)). "No party may contradict the court's [claim] construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). Experts are not permitted to render conclusions regarding the scope of claim limitations that deviate from the Court's claim construction holdings. *See ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112-JRG, 2015 WL 4944514, *4 (E.D. Tex. Aug. 19, 2015) ("Accordingly, all experts, whether Plaintiff's or Defendants', are hereby excluded from providing any opinions that violate these constraints, and any portions of their reports in conflict with this Order are stricken.").

## III.    ARGUMENT

### A.    Dr. Douglas' Opinions Regarding "Transfer Function" Terms Should Be Excluded

Dr. Douglas's opinions regarding the term "transfer function" and surrounding language at paragraphs 163-168 should be excluded as unreliable for: (1) deviating from the construction of "transfer function" (2) arguing that additional unclaimed elements are a basis for non-infringement contrary to settled law; and (3) misstating claim language to create additional limitations.

The parties agreed that a "transfer function" is to be construed as "a mathematical expression that specifies the relationship between an output signal and an input signal." Dkt. 47.

First, rather than apply the construction of "transfer function," Dr. Douglas relies on the specification of the '091 Patent to read in additional limitations. For instance, Dr. Douglas attempts to create a requirement that an "input" of the transfer function must come *directly* from a microphone (*i.e.* without any intermediate signal processing) based on the specification of the '091 Patent, arguing that "the specification explains that 'the transfer function from the noise source 101 to MIC 1 is denoted by H1(z)' and '[t]he transfer function from the signal source 100 to MIC 2 is denoted by H2(z).'" Ex. 1, ¶ 168. The agreed construction does not require that the input to the transfer function come ***directly*** from a microphone. But Dr. Douglas admits he looked to Figure 1 of the '091 Patent to require that, as "one of the issues that I identified as being a reason for the Samsung products not infringing the asserted claims."Dr. Douglas's deviation from the construction of "transfer function" renders his opinion unreliable, and it should be excluded.

Second, Dr. Douglas argues that a transfer function is not representative of a ratio of energy of "acoustic signal[s] received using at least two different microphones" as required by certain claims based on the presence of the intermediate signal processing steps including beamforming and "a series of calculations." Ex. 1, ¶¶ 166-167. Contrary to Dr. Douglas' arguments, the inclusion of additional elements in an accused product is not a defense to infringement. *SunTiger, Inc. v. Blublocker Corp.*, 189 F.3d 1327, 1336, (Fed.Cir.1999) ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device.") (Citation omitted). Dr. Douglas acknowledges that the input signals at issue originate from different acoustic microphones and include information regarding acoustic sound, but nonsensically concludes that those signals are not "acoustic signals" after being processed. For example, Dr. Douglas critiques Dr. Brown for describing "numerous 'intermediate calculations in each frame' to produce the 'resulting transfer functions.'" Ex. 1, ¶ 167. In effect, Dr. Douglas

argues that in order to infringe, the transfer function must be the first or only signal processing applied to a microphone signal, and the presence of any intermediate signal processing results in non-infringement. However, even Dr. Douglas does not appear to agree with that position. When questioned extensively in his deposition, he would not agree that processing a microphone signal somehow rendered it no longer an acoustic signal, instead merely stating that the " ██████████ ██████████████████████████████ " or that processing merely " ██████████ ██████████████████ " *See* e.g., Ex. 5 (Rough Dep. Trans. of Scott C. Douglas, Nov. 22, 2022) at 138:23-139:2 and 142:17-23; *see also id.* at 139:3-142:12; *id.* at 144:17-22 ████████ ████████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████ ) Dr. Douglas himself ***admits*** that there is " ██████ ████████████████████████████████████████ " *Id.* at 145:8-13; *see also id.* at 147:8-15. This argument is contrary to fundamental principles of infringement and also unreliable on this basis.

      <u>Third</u>, Dr. Douglas improperly argues that the claimed transfer function "representative of a ratio of energy of [the] acoustic signal[s] ***received using*** at least two different acoustic microphones" instead requires a transfer function representative of a ratio of energy ***between*** different acoustic microphones. For example, Dr. Douglas argues for noninfringement based on his contention that the ████████ of the accused products "would not represent a ratio of energies ***of the underlying signals*** collected by the omnidirectional physical microphones, as claimed." Ex. 1, ¶ 167 (emphasis added). Dr. Douglas similarly argues that the ***specification*** of the '091 Patent requires that "the 'ratio' of the acoustic signals ***from the microphones*** is directly used." In effect, Dr. Douglas misreads the claims to suggest that the ratio must be "between" the signals obtained

"directly" from the physical microphones, rather than signals "received using" the physical microphones, in an attempt to support his argument that no other signal processing is permitted. These arguments are based on a misreading of the claims to create a non-existent limitation and are therefore unreliable and unhelpful.

The remainder of Dr. Douglas' opinions at paragraphs 163-168 rely on and incorporate these unreliable arguments to conclusorily assert that a Wiener filter is not a transfer function and are therefore similarly unreliable. Thus, Dr. Douglas's opinions at paragraphs 163-168 should be excluded.

**B.     Dr. Douglas Opinions Regarding Transfer Functions Generated "When Voicing Activity is Absent" Should be Excluded**

Dr. Douglas's opinions, ¶¶ 170-181 regarding transfer functions generated when "voicing activity is absent" are improper and unreliable because he misreads the claims to create a negative limitation that *no* transfer function may be generated *unless* voicing activity is absent. This is plainly inconsistent with the language of the claims at issue which contemplates generation of *different* combinations of transfer functions based on whether voicing activity is present or absent.

For example, claim 11 of the '091 Patent recites "wherein the first transfer function is generated in response to a determination that voicing activity is absent" and "wherein the second transfer function is generated in response to a determination that voicing activity is present in the acoustic signals." Moreover, while claim independent claim 1 does not recite transfer functions generated while voicing is present, non-asserted dependent claim 2 recites "[t]he method of claim **1,** wherein removing noise further comprises: generating one transfer function of the at least two transfer functions … when the VAD indicates that user voice activity is present." Non-asserted dependent claim 4 further recites "wherein generating the at least two transfer functions comprises recalculating the at least two transfer functions during at least one prespecified interval."

Jawbone's expert, Dr. Brown, explains how the limitations at issue are satisfied in the accused products by ███████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████. Ex. 2 at 250-253.

Dr. Douglas nonsensically suggests that the claims require that a transfer function be generated **only** when voicing is absent. For example, Dr. Douglas critiques Dr. Brown on the basis that "the alleged transfer functions are generated **regardless** of 'when the VAD indicates that user voicing activity is absent' (claim 1) or whether they are 'in response to a determination that voicing activity is absent' (claim 11)." Ex. 1, ¶ 170." Dr. Douglas goes on to argue that the "████████ ██████████████████████████████████████████████████████████. *Id.*, ¶¶ 177-178. The entirety of Dr. Douglas's argument boils down to the misapprehension that the claims **prohibit** calculation of a transfer function **unless** the VAD indicates that voicing activity is absent. This argument has no basis in the claimed limitations. To the contrary, the claims expressly contemplate generation of transfer functions when voicing is present (*see* claims 2 and 11), and expressly contemplate "recalculating" the transfer functions "during at least one prespecified interval" (*see* claim 4). Dr. Douglas' argument for non-infringement ████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████. Dr. Douglas's opinions therefore have no basis in the claims and in fact contradict the claim language.

Dr. Douglas's opinions at paragraphs 170-181 should therefore be excluded as irrelevant, unreliable, and unhelpful to the jury.

C.      **Dr. Douglas' Opinions Regarding the "subband" Limitations Should Be Excluded**

Dr. Douglas' opinions, ¶¶ 195-199 should be excluded as unreliable for conclusorily arguing that "subband" signal processing cannot occur in the frequency domain in the absence of any claim construction or claimed requirement.

Claim 15, which depends from Claim 11, is generally directed to subband processing within the claimed invention, reciting "generating a transfer function representative of the ratio of acoustic energies received in each microphone in each subband; removing acoustic noise from each of the plurality of subbands using a transfer function ..." and ultimately "combining the plurality of denoised acoustic data streams to generate the denoised acoustic data stream." There is absolutely no recitation of any requirement to perform subband processing in the time domain, and in fact the specification expressly states that subband processing is performed in the frequency domain: "[t]he wider range *of frequencies* over which a transfer function must be calculated, the more difficult it is to calculate it accurately. Therefore, the acoustic data was divided into 16 subbands, and the denoising algorithm was then applied to each subband in turn." Ex. 3, 8:28-32. Dr. Brown explains that the ███████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. Ex. 2 at 247-258.

Dr. Douglas inexplicably asserts that the accused products do not perform these limitations because "████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████." Ex. 1 at ¶ 197. Dr. Douglas' argument boils down to a naked assertion that subband processing must have

an "associated indication of sample time" or must be in a domain "other than the frequency domain." There is no such requirement in the claims, and Dr. Douglas identifies no reason a POSITA would read the claims to have such a requirement – they would not. Contrary to Dr. Douglas' apparent misunderstanding, the specification of the '091 Patent expressly teaches subband processing in the frequency domain. Ex. 3, 8:24-32. Even if Dr. Douglas could somehow justify this position after the fact, his opinions would not be helpful to the jury because he has not disclosed any explanation which he could provide. Moreover, to the extent that Samsung had some undisclosed position that "subbands" must be in the time domain, it waived that argument for failure to raise it at claim construction when it had the chance.

Dr. Douglas's opinions, ¶¶ 195-199 are therefore unreliable and unhelpful conclusory and without any relationship to the claimed limitations and are improper for Samsung's failure to disclose its apparent position during claim construction. They should be excluded in their entirety.

D.    **Dr. Douglas' Opinions Regarding the Terms "a time period" / "the time period" Should Be Excluded**

Dr. Douglas' opinions, ¶¶ 200-204 should be excluded as unreliable, as his interpretation that the claims require the impossibility of a users' speech to be both present and absent at the same time is conclusory and unsupported by the claim language.

Claim 11 of the '091 Patent recites "the first transfer function ... generated in response to a determination that voicing activity is absent from the acoustic signals **for a period of time** … the second transfer function ... generated in response to a determination that voicing activity is present in the acoustic signals **for *the* period of time**." As Dr. Brown opined in response to Samsung's non-infringement contention, a POSITA would merely understand this limitation to require that "a period of time" includes portions where voicing is absent and other portions where voicing is present, such that "first transfer function generated in response to a determination that voicing is

8

absent, and a second transfer generated in response to a determination that voicing is present, both over the course of a period of time." Ex. 2 at 301. Dr. Brown expressly noted that, contrary to Samsung's non-infringement contention and Dr. Douglas' opinion here, "[a] POSITA would **not** understand this limitation to require the impossibility that a VAD register that a speech signal is both present and absent in the same instant." *Id.*

Dr. Douglas merely re-hashes Samsung's position that this limitation requires the impossibility that voicing be both present and absent simultaneously, stating "I believe claim 11 requires one determination that voicing activity is absent and another determination that voicing activity is present, both occurring over the same "period" of time." Ex. 1, ¶ 202. He does not appear to dispute that his interpretation renders the claim impossible to infringe with a system including a single claimed VAD sensor as described in the specification. *See* e.g.*,* Ex. 3 at 10:27-48. Instead, he suggests that "a POSITA could have used **two** VAD sensors" which he suggests could output conflicting results regarding voicing at the same time. Ex. 1, ¶ 203 (emphasis added). Samsung and Dr. Douglas cannot maintain with a straight face that the plain and ordinary meaning of "the period of time" renders the claim impossible to infringe unless the system actually has two VAD sensors that output contradictory results. Dr. Douglas' unreasonable interpretation has no basis in the claim language, and should therefore be excluded.

Dr. Douglas's position should also be excluded because it is not an application of the plain and ordinary meaning of the claim language, and because waived any construction for this term by failing to offer one at claim construction. No reasonable litigant could believe that a construction rendering a claim effectively impossible to satisfy is an application of the plain and ordinary meaning. Indeed, Dr. Douglas and Samsung's real position appears to be that the claim is indefinite or impossible to infringe on its face. It attempts to obfuscate this position by

concocting a scenario adding a second unclaimed (and apparently malfunctioning) voice activity detector. Samsung failed to raise any such position during claim construction, and cannot ambush Jawbone with an undisclosed claim construction position in its rebuttal expert report.

Accordingly, Dr. Douglas' opinions, ¶¶ 200-204 are improper as unreliable and waived by Samsung at claim construction, and should be excluded.

### E.   Dr. Douglas' Opinions Regarding the "virtual microphone," "linear response," and "signal processor … operative to combine the first and second microphone signals by filtering and summing in the time domain" limitations should be excluded

Dr. Douglas' opinions at paragraphs 260-264, ¶¶ 269-276, and ¶¶ 287-296 should be excluded for misapplying the law to argue for non-infringement based on the presence of elements ***in addition to*** the claimed elements.

The asserted claims of the DOMA patents recite "virtual microphones" which each have certain types of "linear responses." The term "virtual microphone" is construed as a "microphone constructed using two or more omnidirectional microphones and associated signal processing." Claim 1 of the '357 patent further recites a "signal processor … operative to combine the first and second microphone signals by filtering and summing in the time domain."

Dr. Brown identifies ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████. *See* Ex. 2 at 261-268, and 281. Dr. Douglas improperly disputes those opinions based on the presence of ***additional*** elements in contravention of settled law. *SunTiger, Inc.*, 189 F.3d at 1336, ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device.") Dr. Douglas' critiques are without any legitimate basis, and allowing them to go before the jury would only result in confusion.

For example, Dr. Douglas relies on the presence of ████████████████████ which he argues somehow results in non-infringement of the "virtual microphone" term by processing omnidirectional microphone signals *in addition* to their combination and associated signal processing in ████████████, arguing that ████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████." Ex. 1, ¶ 263. Dr. Douglas attempts to muddy the waters by referring to the microphone signals ████████████████████████ but even if these were somehow transformed into something other than microphone signals, it would be irrelevant – intermediate processing by ██████ does not somehow negate performance of a limitation "using two or more omnidirectional microphone signals." The presence of this additional signal processing is entirely irrelevant to the construction of a virtual microphone, "using two or more omnidirectional microphones and associated signal processing."

Dr. Douglas similarly argues that separate signal processing steps involving ████████████ somehow negate the "linear responses" of the virtual microphones which Dr. Brown identifies as infringing. For example, Dr. Douglas argues that it is "not possible" for a speech reference and noise reference signal ████████████████ to have a "substantially similar response to noise" because "the response to noise in the speech reference signal is reduced relative to the ████████████████." Ex. 1, ¶ 273; *see also id.,* ¶¶ 270-272 and 274. But again, it does not matter what processing is done in ████████████, as the functionality accused of infringement is contained elsewhere in blocks associated with ██████████████. Dr. Douglas' opinions that signal processing done ████████████ would not satisfy the claims are irrelevant, and at best would only serve to mislead the jury.

As yet another example, Dr. Douglas argues that "filtering and summing" does not occur "in the time domain" merely because of separate and additional processing which he argues occurs between those steps. For example, Dr. Douglas critiques Dr. Brown's explanation regarding "summing" in the time domain on the basis that "███████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████." Ex. 1, ¶ 289. But the order of steps, or presence of some additional signal processing, is irrelevant to infringement. Dr. Douglas also again assumes that the presence of any additional or intermediate signal processing somehow results in non-infringement in contravention of the law, and even attempts to critique Dr. Brown on this ground, stating that "Dr. Brown appears to be arguing that if the purported 'filtering and summing' operates on any signal that can be traced back to a physical microphone signal, no matter how attenuated, then it **operates on** the physical microphone signal itself." Ex. 1, ¶ 295. Dr. Douglas' attempt to create a requirement that all signal processing be done to a "physical microphone signal" without any intervening steps has no basis in the claims or the law.

Thus, Dr. Douglas' opinions at paragraphs 260-264, ¶¶ 269-276, and ¶¶ 287-296 should be excluded for misapplying the law.

### F.     Dr. Douglas' Opinions Regarding the "null" Limitations Should Be Excluded

Dr. Douglas' opinions at paragraphs 247, and 302-304 should be excluded for misapplying the construction of "null" to argue that any dip in the response of a virtual microphone constitutes a "null."

Claim 23 of the '691 Patent recites a first "virtual microphone" with "a first linear response to speech that is … devoid of a null." Claim 3 of the '691 Patent similarly recites a first "virtual microphone" with a first linear response to speech "wherein the first linear response to speech is devoid of a null." The parties agreed to construe "null" as "a zero or minima in the spatial response

of a physical or virtual directional microphone," tracking language in the specification of the '691, '080, and '357 patents. Dkt. 47-1; *see also* Ex. 4, 5:42-43. In agreeing to that language from the specification, the parties expressly adopted the type of "zero" or "minima" described in the specification, as exemplified at figures 9-13. Samsung has now reneged on that agreed claim construction, and argues that embodiments which the specification ***expressly*** identifies as "without a null" somehow have a minima. Compare Ex. 1, ¶¶ 302-304 with Ex. 4 at Fig. 10. Dr. Douglas' opinions regarding the term "null" are therefore unreliable for failing to properly apply that construction.

Dr. Douglas applies the term "minima" to argue that ***any*** dip or variation whatsoever in the spatial response of a virtual microphone is a "null," even if nowhere near a zero in the response. For example, he argues that "for a beampattern (or gain), minima are understood to a POSITA to be points corresponding the lowest amount, value, or degree attained as one sweeps in direction around the array from 0 degrees to 360 degrees. When two omnidirectional microphones are combined in beamforming, the resulting beam patterns necessarily have variations in gain as a function of angle." Ex. 1, ¶ 303.  In other words, Dr. Douglas argues that ***any*** "variations in gain" (*i.e.* any dip in a polar plot) are minima.

Dr. Douglas's interpretation is unreliable, because he contradicts the very embodiments described in the portion of the specification which the parties adopted for the agreed construction of null. The specification shows that a minima does ***not*** include any variation in the response of a virtual microphone, and specifically identifies examples of responses devoid of a null that are identical to those with "local minima" on which Dr. Douglas relies for his nulls. For example, Dr. Douglas constructs the below figure which he says has a null due to a "local minima":



Figure 5. Beam pattern for a beamformed microphone with local minimum.

The specification of the '691 Patent depicts a virtually identical figure which it expressly states that "there is no null" in the response. Yet, Dr. Douglas testified to the contrary that, ██████ ████████████████████████████ *Ex. 5* at 208:18-208:3; *id.* at 211:18-22.



FIG. 10 is a plot of linear response of virtual microphone $V_2$ to a 1 kHz noise source at a distance of 1.0 m, under an embodiment. There is no null and all noise sources are detected.

Ex. 4, Fig. 10 and 2:45-48; *see also id.,* Figs. 11-12 and 2:49-56. This is in sharp contrast with the near-zero response depicted in Fig. 9, which the patent describes as a null. Accordingly, Dr. Douglas' interpretation of the term "minima" within the construction of "null" is also unreliable because he contradicts the express disclosure of the specification.

    Second, Dr. Douglas interpretation is unreliable because he concludes that the claims are ***impossible*** for ***any*** system to satisfy. Dr. Douglas argues that every directional microphone necessarily has a null. Ex. 1, ¶ 303. However, because the "virtual microphone" which the claims require to have the response "devoid of a null" is construed as a "microphone constructed using

two or more omnidirectional microphones and associated signal processing," Dr. Douglas's interpretation results in a claim that is impossible to satisfy for ***any*** virtual microphone. Dkt. 47. Under Dr. Douglas' interpretation, the ***only*** possible virtual microphone without a null has an omnidirectional response. Ex. 1, ¶ 304, Fig. 1. This defeats the entire purpose of having a claimed virtual microphone, which is constructed from omnidirectional microphones specifically to have a directional response. *See* '691 Patent, 5:59-62 ("The term 'virtual microphones (VM)' or 'virtual directional microphones' means a microphone constructed using two or more omnidirectional microphones and associated signal processing."). Dr. Douglas' application of the construction rendering it physically impossible to satisfy is not a reasonable or reliable interpretation.

In addition to the unreliability of Dr. Douglas' positions, Samsung waived any such argument that a "minima" includes any variation in response by agreeing to a construction taken from the specification. Samsung knew of Jawbone's infringement allegations against beamformers since the outset of this action. Given that Dr. Douglas' interpretation would render the claims impossible to satisfy with ***any*** beamformer, no reasonable litigant could believe that this is a reasonable application of the parties' agreed construction. Dr. Douglas' opinions should further be excluded on that basis.

Dr. Douglas's opinions regarding the "null" terms at paragraphs 247, and 302-304 should therefore be excluded.

## IV.    CONCLUSION

For the foregoing reasons, Jawbone respectfully requests that the Court grant its Motion.

Dated:  November 23, 2022                    Respectfully submitted,

                                             */s/ Peter Lambrianakos*
                                             Alfred R. Fabricant
                                             NY Bar No. 2219392
                                             Email: ffabricant@fabricantllp.com
                                             Peter Lambrianakos

NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
Texas State Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF
JAWBONE INNOVATIONS, LLC***



## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2022, a true and correct copy of the above and foregoing document has been served by email on all counsel of record.

*/s/ Peter Lambrianakos*
Peter Lambrianakos

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule CV-7(h), the undersigned certifies that counsel for Plaintiff, met and conferred with counsel for Defendants on November 22, 2022.  Defendants are opposed to the relief requested herein leaving an open issue for the Court to resolve.

*/s/ Peter Lambrianakos*
Peter Lambrianakos