**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| JAWBONE INNOVATIONS, LLC, | § § § | Case No. 2:21-cv-00186-JRG-RSP |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | ████████████████ |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | § § § § | |
| Defendants. | § § | |

**PLAINTIFF JAWBONE INNOVATIONS, LLC'S**
**MOTION TO STRIKE CERTAIN OPINIONS OF DR. SCOTT C. DOUGLAS**

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.      FACTUAL BACKGROUND AND INTRODUCTION ....................................................... 1

II.     LEGAL STANDARDS ................................................................................................... 1

III.    ARGUMENT ................................................................................................................... 2

    A.  Dr. Douglas' Improper Comparison of the Accused Products to Jawbone Headsets
        Should Be Struck ..................................................................................................... 2

    B.  Dr. Douglas' Opinions Based on Indefiniteness Arguments Should Be Struck ................ 3

    C.  Dr. Douglas' Attempts to Create Additional Limitations Based on Inventor
        Testimony Should Be Struck ..................................................................................... 5

    D.  Dr. Douglas Opinions Regarding Differences Between the Galaxy Buds and
        Galaxy Buds + Based on Discussions with ███████ Should be Struck ................ 8

    E.  Dr. Douglas' Opinions Regarding Differences Between the Galaxy Buds + and
        Galaxy Buds Pro Based On a zdnet.com Article Should Be Struck ................................ 10

IV.     CONCLUSION ............................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acorn Semi, LLC v. Samsung Electronics Co.*,
  No. 2:19-cv-00347-JRG, Dkt. 331 (E.D. Tex. Apr. 29. 2021) .................................................2

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286, (Fed. Cir. 2014).............................................................................................1

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)............................................................................................................1, 8

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
  No. 2:15-CV-00011-RSP, 2017 WL 5137401 (E.D. Tex. Nov. 4, 2017)................................3

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009).............................................................................................2

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
  705 F.3d 518 (5th Cir. 2013) ..................................................................................................9

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)................................................................................................................8

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
  589 F.3d 1179 (Fed. Cir. 2009).............................................................................................2

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)................................................................................................................1

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995).............................................................................................4, 6

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*,
  No. 6:11-cv-492-RWS-KNM, 2017 WL 4020591 (E.D. Tex. Sept. 13, 2017).......................2

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)..............................................................................................4

*Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*,
  No. 2:15-CV-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) .................................9

*Senza-Gel Corp. v. Seiffhart*,
  803 F.2d 661 (Fed. Cir. 1986)................................................................................................4

Plaintiff Jawbone Innovations, LLC ("Jawbone" or "Plaintiff") respectfully submits this Motion to Strike Certain Opinions of Dr. Scott C. Douglas

## I.     FACTUAL BACKGROUND AND INTRODUCTION

Dr. Scott C. Douglas submitted his expert report regarding non-infringement of the asserted patents on October 18, 2022. Ex. 1 [Douglas Rebuttal].

Dr. Douglas' report is replete with conclusory opinions and improper arguments which are neither reliable nor helpful to the Jury. As discussed in greater detail below, Dr. Douglas: (1) improperly argues for non-infringement by comparing the accused products to patented products of the assignee, rather than the claim limitations; (2) improperly relies on another Court's indefiniteness finding regarding certain claim terms to argue for non-infringement; (3) attempts to read additional limitations (including negative limitations) into the claims based on an inventor's general characterization of his invention; and (4) relies on unsupported conclusory assertions and attempts to launder hearsay regarding differences in certain Accused Products related to Jawbone's theory of damages. Dr. Douglas' opinions on each point should be stricken.

Jawbone therefore respectfully requests that the Court strike Dr. Douglas' opinions at paragraphs 239-241, 265-276, 345-346, and footnotes 4, 6, and 17.

## II.     LEGAL STANDARDS

Fed. R. Evid. 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). "[A] district court judge, acting as a gatekeeper, may exclude evidence if it is based upon unreliable principles or methods, or legally insufficient facts and data." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314 (Fed. Cir. 2014).

An expert's infringement opinion must use "the claim construction adopted by the court." *Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009) (citation omitted). "Expert testimony based on an impermissible claim construction is properly excluded as irrelevant and on the basis that the evidence could confuse the jury." *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492-RWS-KNM, 2017 WL 4020591, at *3 (E.D. Tex. Sept. 13, 2017) (citing *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016)). "No party may contradict the court's [claim] construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

## III.   ARGUMENT

### A.  Dr. Douglas' Improper Comparison of the Accused Products to Jawbone Headsets Should Be Struck

Dr. Douglas improperly argues non-infringement by comparing the Accused Products to headsets sold by Jawbone, rather than the limitations of the Asserted Claims, ¶¶ 239-241. Those opinions should be struck.

Claim 3 of the '543 Patent recites "at least one accelerometer sensor in contact with skin for receiving the voice activity signals." Ex. 2 ['543 Patent], claim 3. Dr. Douglas argues that this limitation is not met by attempting to contrast the accelerometer in Samsung's earbuds with a skin-surface microphone present in certain Jawbone headsets. Ex. 1, ¶¶ 239-241. Whether or not the accused products include a similar implementation to other patent-practicing products is irrelevant to infringement, and is no basis to limit the asserted claims to any particular limitation (particularly as the implementation used a skin-surface microphone and the claim concerns an accelerometer). *See Acorn Semi, LLC v. Samsung Electronics Co.*, No. 2:19-cv-00347-JRG, Dkt. 331 at 10 (E.D. Tex. Apr. 29, 2021) ("[S]uch comparisons are clearly improper.").

Dr. Douglas' attempt to argue non-infringement by comparing the Accused Products with an assignee's products, rather than the limitations of the Asserted Claims, is highly improper, and ¶¶ 239-241 of his Report should be struck.

### B.  Dr. Douglas' Opinions Based on Indefiniteness Arguments Should Be Struck

Dr. Douglas improperly relies on a non-binding and non-final indefiniteness finding regarding the terms "substantially similar/substantially dissimilar" from another Court to argue non-infringement, and improperly opines on terms which he finds indefinite. Those opinions are improper, unreliable, and should be struck. Ex. 1, ¶¶ 265-276

The asserted '691, '080, and '543 Patents (collectively "DOMA Patents") recite virtual microphones with certain configurations including "substantially similar/substantially dissimilar" responses to speech and noise. *See* e.g., Ex. 2, claim 1. Dr. Douglas states, "I understand that in the co-pending case Jawbone v. Google LLC, that the VM patent claim terms 'substantially similar/substantially dissimilar' were found by the court to be indefinite. 6:21-CV-00985-ADA, DI 88 (W.D. Tex. Oct. 14, 2022). I agree with this finding. A POSITA would not be able to determine with reasonable certainty the boundaries of when the responses of two virtual microphones are 'substantially similar' nor 'substantially dissimilar.'" Ex. 1, ¶ 265. ████████ ███████████████████████████████████████████████████ ████████████████████████ Rough Dep. Trans. of Dr. Scott C. Douglas, Nov. 22, 2022, Ex. 5 at 198:4-10. Dr. Douglas' opinions are improper because the non-final and non-binding finding of another Court over terms which Samsung failed to propose for construction (and did not argue are indefinite) is irrelevant to any issue in this Action. Moreover, Dr. Douglas non-infringement opinions are unreliable because he cannot reliably opine on claim terms which he admits that he does not understand, and to which he has failed to apply the understanding of a POSITA.

First, Samsung did not propose the "substantially similar/substantially dissimilar" terms for construction, and cannot now adopt the position that those terms are indefinite. *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2017 WL 5137401, at *15 (E.D. Tex. Nov. 4, 2017) ("Failure to timely raise . . . claim construction arguments should ordinarily result in waiver of the arguments.") (citing *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007)). Any such position was waived. The fact that another court issued a claim construction in another case finding those terms indefinite is not effective to enter any such construction in this action, and does not allow Samsung to back-door a non-final construction from another action. *See e.g. Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 667 (Fed. Cir. 1986) ("No final judgment has ever been entered, and Senza-Gel's citations of cases in which judgment had been entered are inapt. *Res judicata* is simply inapplicable, the action not having been terminated and the decision to permit amendment, as well as any other interlocutory decision or order, being subject to revision by the district court at any time before entry of final judgment.")

Second, Dr. Douglas cannot reliably opine on terms which he ***admits*** he does not understand. Dr. Douglas' report states that "I understand that in the co-pending case Jawbone v. Google LLC, that the VM patent claim terms 'substantially similar/substantially dissimilar' were found by the court to be indefinite … ***I agree with this finding***." Ex. 1, ¶ 265. The first step of assessing infringement is to construe the claims, and otherwise unconstrued terms are to be given their ordinary meaning. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) ("An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed."); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("[W]ords of a claim are generally given their ordinary and customary

4

meaning.") (citations omitted). But, Dr. Douglas does not even attempt to perform this analysis. Instead, Dr. Douglas affirmatively opines that a POSITA "would not be able to determine with reasonable certainty the boundaries of when the responses of two virtual microphones are 'substantially similar' nor 'substantially dissimilar," and goes on to opine that it is "not possible" for the Accused Products to satisfy these limitations without ever articulating how a POSITA *would* understand them. Ex. 1, ¶¶ 265, 273. It appears that Dr. Douglas has instead tacitly assumed that ***any*** difference between virtual microphone responses renders them not "substantially similar." But having admitted that he does not understand the scope of these terms "with reasonable certainty," and having relied on his opinions that a POSITA would not understand the terms either, Dr. Douglas is precluded from construing the claims as needed to opine on infringement. He cannot give relevant or reliable opinions to the jury without carrying the first step of determining infringement.

Dr. Douglas' opinions at paragraphs 265-276 should therefore be struck.

### C. Dr. Douglas' Attempts to Create Additional Limitations Based on Inventor Testimony Should Be Struck

Dr. Douglas improperly relies on the testimony of a named inventor of the Asserted Patents, Dr. Gregory Burnett, to limit claims throughout his report, including paragraphs 89, 137 and 285. Those opinions are improper and should be struck.

In footnote 4, ¶ 89, while discussing the DOMA' patents specification regarding virtual microphone responses, Dr. Douglas states that "I note that Dr. Gregory Burnett, the sole inventor of these patents appears to believe ████████████████████████████████ ████████████████████████ … In my opinion, the invention needs the similar responses to speech and noise, i.e., at a distance, in order to remove all sound at a distance, but the dissimilar responses to speech and noise at a close distance, such that the system operates as a conventional

5

noise suppression system." Ex. 1, ¶ 89. Dr. Douglas does not attempt to attribute his formulation

of elements that "the invention needs" to the claims. Instead, Dr. Douglas relies on his

conclusions based on naked inventor testimony to read in limitations regarding the distances of

respective speech and noise responses, "***such that the system operates as a conventional noise***

***suppression system***," (emphasis added), which is not a limitation of the claims. Ex. 1, ¶ 89.

Since Dr. Douglas's non-infringement argument is based neither on the Court's claim

construction order nor the plain meaning of the claims[1], it is inherently unreliable and should be

stricken.



In footnote 6, ¶ 137, Dr. Douglas argues that ███████████████ cannot

infringe because "████████████████████████████████████

██████████" and asserts that "Dr. Gregory Burnet, the sole inventor on the '691, '357, and '080

patents, testified that ████████████████████████████████

███████████████████████████████." Ex. 1, ¶ 137. Dr. Douglas' attempt to

create a negative limitation against Griffiths-Jim beamformers based on Dr. Burnett's testimony

is improper and has no basis the law. As an initial matter, Dr. Douglas grossly mischaracterizes

Dr. Burnett's testimony. When presented with Van Campernolle, an alleged prior art reference

referring to a "Griffiths Jim Beamformer" Dr. Burnett stated ████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████ Ex. 3 [Burnett Day 1],

---

[1] *Markman*, 52 F.3d at 976  ("An infringement analysis entails two steps. The first step is
determining the meaning and scope of the patent claims asserted to be infringed.")

224:16-225:5, Sept. 7, 2022. Regardless, Dr. Burnett's testimony regarding a prior art reference is no basis for Dr. Douglas to limit the claims to exclude a Griffiths Jim beamformer – whether Dr. Burnett ████████████████████████████████████████ is irrelevant to whether a system implementing a type of Griffiths-Jim beamformer could infringe the asserted patents. Dr. Douglas' attempt to exclude Griffiths-Jim beamformers has no basis in the claims and would only confuse the jury.

Third, in footnote 17, ¶ 285, Dr. Douglas relies on others of Dr. Burnett's answers regarding Van Campernolle to suggest that the claims exclude "old-fashioned beamforming" that "maxim[izes] the loudest response in the room." Dr. Douglas again mischaracterizes Dr. Burnett's testimony, stringing together portions of his answer separated by a full page of testimony. Regardless, Dr. Burnett's testimony ████████████████████ does not create a negative limitation that excludes "old-fashioned beamforming" or "maximizing the loudest response in the room" from the claims. Had the patentee intended to exclude those limitations (to the extent they could be understood at all), it would have done so. It did not, and Dr. Douglas has no basis to suggest that either is grounds for non-infringement.

Finally, during his deposition, Dr. Douglas *admitted* that he relied on Dr. Burnett's testimony ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████ Ex. 5 at 89:18-90:1; *see also id.* at 90:2-7 ("█████████████ ████████████████████████████████████████ ██████████████████████████████ ); *see also id.* at 91:8-16, 93:10-23. This confirms Dr.

Douglas' improper reliance on Dr. Burnett's testimony to import limitations into the claims based on the inventor's purported "intent."

In sum, Dr. Douglas' citations to Dr. Burnett's testimony in the above paragraphs seek to add limitations to the DOMA patents without any basis in the claims. Allowing him to suggest that the claims are limited based on the cited testimony would only lead to jury confusion. Footnotes 4, 6, and 17 to Dr. Douglas' report, ¶¶ 89, 137 and 285 should therefore be struck.

### D. Dr. Douglas Opinions Regarding Differences Between the ▇▇▇▇ and ▇▇▇▇ Based on Discussions with ▇▇▇▇ Should be Struck

Dr. Douglas' opinions at paragraph 345 should be struck because he improperly attempts to launder non-expert hearsay testimony from a Samsung employee, and because his conclusory assertions are unreliable.

Plaintiff's technical expert, Dr. Brown, relied on his review of source code and documents for Samsung's Galaxy Buds and Galaxy Buds + earbuds to conclude that ▇▇▇▇ ▇▇▇▇ ▇▇▇▇ of infringing the DOMA patents including functions in ▇▇▇▇ ▇▇▇▇ Ex. 4 [Brown Supp Base] at 354, Section 5.2.1. Plaintiff's damages expert, Mr. Bergman, in turn relied on Dr. Brown's opinions in apportioning value attributable to the patented features of the DOMA patents.

Dr. Douglas relies solely on a vaguely described discussion with ▇▇▇▇, a Samsung employee, to dispute this point. But the entirety of Dr. Douglas' rebuttal states:



Ex. 1, ¶ 345. This opinion should be stricken because Dr. Douglas merely cloaks ███████

hearsay lay-opinions in expert testimony, and because his opinions are purely conclusory.

      First, Dr. Douglas' conclusion that ████████████████████████████████████

███████████████████████████████ is nothing more than *ipse dixit*: he simply

repeats ██████████ opinion as if it were his own. Indeed, Dr. Douglas testified to the contrary

that ████████████████████████████████████████████████

████████████████ Ex. 5, 47:4-18; *see also id.* at 49:5-9 ("███████████████████

████████████████████████████████████████████████████

████████████████████████████████); *id.* at 49:23-

50:1 ("███████████████████████████████████████████████

████████████████████). Even to the extent Dr. Douglas' is allowed to rely on

his vaguely described phone call with ██████ for the proposition that there *is* an 'improved

optimization," Dr. Douglas fails to disclose any basis for *how* or *why* that optimization is not

"████████████████████████████████," likely because he relied solely on ███

██████ conclusion. In order to produce "reliable" and "reproduceable" opinions, Dr. Douglas

must at the bare minimum explain how he came to this conclusion. *General Elec. Co. v. Joiner*,

522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence

requires a district court to admit opinion evidence that is connected to existing data only by the

*ipse dixit* of the expert."). He cannot merely act as a mouthpiece for Samsung. *Robroy Indus.-*

*Tex., LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *3 (E.D.

Tex. Apr. 10, 2017) (excluding testimony where expert "is not serving as an expert, but is simply

passing along information provided by others and laying out the defendant's theory of the case")

It should therefore be struck.

Dr. Douglas' opinion should further be struck as an improper attempt to launder hearsay lay-opinion testimony. Dr. Douglas' sole basis for this opinion is a call with ███████, which he failed to describe in sufficient detail to explain how or why he reached them. Dr. Douglas' recitation of ███████ assertions does not somehow render them proper expert testimony. *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) ("Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.") (internal citations omitted). Dr. Douglas' opinion should further be struck on this basis.

Dr. Douglas' opinions at ¶ 345 should therefore be struck

### E. Dr. Douglas' Opinions Regarding Differences Between the Galaxy Buds + and Galaxy Buds Pro Based On a zdnet.com Article Should Be Struck

Dr. Douglas' opinions at ¶ 346 should be struck because his conclusory assertions based on the ZDNET article entitled "Samsung credits data transfer software for Galaxy Buds Pro newest features" are conclusory and lack relevance to any issue while being likely to confuse the jury.

Plaintiff's technical expert, Dr. Brown, relied on his review of ███████



███████ Ex. 4 at 354, Section 5.2.2 (emphasis added).  Dr. Bergman similarly relied on these opinions in apportioning value attributable to the patented features of the VAD patents.

Dr. Douglas *does not dispute* that opinion. Instead, Dr. Douglas points to purportedly new features in the Galaxy Buds *Pro*, a later-released earbud model which is irrelevant to Dr. Brown's opinions, and to Dr. Bergman's opinions based on the increase in sales price between ▮▮▮▮▮▮▮ Dr. Douglas' rebuttal states, in its entirety:

> **2.      Use of the VPU in the Buds Pro**
>
> 346.    With respect to the VPU that was added to the Buds Pro, this component has also been used to enable functionalities that are unrelated to the asserted patents, such as active noise cancellation and ambient sound passthrough. *See, e.g.*:
>
>> The earbuds also have three microphones and a voice pickup unit (VPU), which were implemented for ANC, ambient sound, and voice detection, with Moon saying voice detection was a feature desired by its customers.
>>
>> The VPU, which is a vibration sensing microphone that can sense when a person's head vibrates, enables the Galaxy Buds Pro to filter out other external sounds and focus on picking up the user's voice. The Galaxy Buds Pro, via software, will also decide in what portions the three microphones and VPU will be used, dependent on the surrounding sound environment.
>>
>> After adding these microphones and the VPU, Samsung tested tens of thousands of noise scenarios to make sure the ANC on Galaxy Buds Pro worked properly, the executive said.
>
> https://www.zdnet.com/article/samsung-credits-data-transfer-software-for-galaxy-buds-pros-newest-features/

Dr. Douglas' assertions have no probative value, as his assertions regarding functionalities added in the Galaxy Buds Pro are irrelevant to ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ Allowing Dr. Douglas to opine on these irrelevant functionalities of the Galaxy Buds Pro in response to Dr. Brown's opinions on the Galaxy Buds Live would be highly confusing to the jury. These opinions should therefore be struck.

Dr. Douglas's opinions should further be struck because they are conclusory. Dr. Douglas apparently relies solely on the article's statement that "[t]he earbuds also have three microphones and a voice pickup unit (VPU) which were implemented for ANC, ambient sound, and voice detection" for the conclusion that the VPU "has also been used to enable functionalities that are unrelated to the asserted patents." Nothing in the article supports his unexplained conclusions that any such features are "unrelated to the asserted patents," and he offers no other rationale for that assertion.

Dr. Douglas' opinions at paragraph 346 should therefore be struck.

## IV.   CONCLUSION

For the foregoing reasons, Jawbone respectfully requests that the Court grant the Motion.

Dated:  November 23, 2022                    Respectfully submitted,

*/s/ Peter Lambrianakos*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
Texas State Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300

Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF***
***JAWBONE INNOVATIONS, LLC***

13



**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 23, 2022, a true and correct copy of the above and foregoing document has been served by email on all counsel of record.

<u>/s/ Peter Lambrianakos</u>
Peter Lambrianakos

**<u>CERTIFICATE OF CONFERENCE</u>**

Pursuant to Local Rule CV-7(h), the undersigned certifies that counsel for Plaintiff, met and conferred with counsel for Defendants on November 22, 2022. Defendants are opposed to the relief requested herein leaving an open issue for the Court to resolve.

<u>/s/ Peter Lambrianakos</u>
Peter Lambrianakos